**UNITED STATES ex rel. CRIPPLE CREEK & COLORADO SPRINGS R. CO. v. INTERSTATE COMMERCE COMMISSION.**

(Court of Appeals of District of Columbia. Submitted December 8, 1925. Decided March 1, 1926. Motion for Reargument Denied March 20, 1926.)

No. 4357.

Mandamus  ☞73(1)—Interstate Commerce Commission's refusal to treat united lines as "system of transportation" in determining operating deficit of railroad held erroneous, but matter which courts could not correct by mandamus (Transportation Act 1920, § 204 [Comp. St. Ann. Supp. 1923, § 10071¼bbb]).

Interstate Commerce Commission's refusal to treat combined lines as a "system of transportation," in determining operating deficit of railroad recoverable under Transportation Act 1920, § 204 (Comp. St. Ann. Supp. 1923, § 10071¼bbb), *held* erroneous, but matter which it was beyond jurisdiction of courts to correct by mandamus.

Appeal from the Supreme Court of the District of Columbia.

Suit for mandamus by the United States, on the relation of the Cripple Creek & Colorado Springs Railroad Company, against the Interstate Commerce Commission. From a decree dismissing the petition, relator appeals. Affirmed.

R. R. Faulkner and M. C. Elliott, both of Washington, D. C., for appellant.

P. J. Farrell and R. G. Curry, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellant, Cripple Creek & Colorado Springs Railroad Company, hereafter for convenience referred to as relator, brought a suit in mandamus in the Supreme Court of the District of Columbia to compel the Interstate Commerce Commission, appellee herein, and hereafter referred to as the Commission, to issue to relator a certificate showing the amount payable to it, under section 204 of the Transportation Act of 1920. 41 Stat. 460 (Comp. St. Ann. Supp. 1923, § 10071¼bbb). The Commission answered, to which relator joined issue. On hearing, the court dismissed relator's petition, and from the judgment this appeal was taken.

It appears that the relator railroad company, a corporation of the state of Colorado, during the period of federal control was engaged in the business of a common carrier, hauling freight and passengers between Cripple Creek and Colorado Springs, where its line of road connected with the Atchison, Topeka & Santa Fé Railway, a railroad under federal control. During the period from May 1, 1915, to July 21, 1919, relator operated a leased line of railroad between Cripple Creek and Colorado Springs, approximately 50 miles in length, hereafter referred to as the Short Line. Over this line it handled its passenger and freight business.

On July 21, 1917, relator leased from the Midland Terminal Railway Company 29.4 miles of road extending between Cripple Creek and Divide, Colo. On the same date relator was assigned a lease by that company of trackage rights over 26.9 miles of the line of the Colorado Midland Railroad between Divide and Colorado Springs. Over this new, but longer, route, hereafter referred to as the Midland Line, between Cripple Creek and Colorado Springs, relator company routed all its through freight traffic, while its passenger trains continued to be moved over the Short Line. On May 12, 1918, a bridge on the Short Line near Colorado Springs was destroyed by fire, thereafter requiring relator to route all its through traffic, freight and passenger, over the Midland Line. This lease of the Midland Line was terminated on January 1, 1919, requiring relator thereafter to conduct all its traffic over the Short Line. On July 15, 1919, relator's lease of the Short Line was terminated, and all operations of relator then ceased. Relator, therefore, operated the Midland Line from July 21, 1917, to January 1, 1919, and the Short Line from May 1, 1915, to July 15, 1919.

It appears that the Midland Terminal Company had operated the line between Cripple Creek and Divide during what is known as the "test period," covering a period of three years, from July 1, 1914, to June 30, 1917, and the Colorado Midland Railroad had operated the line between Divide and Colorado Springs during the test period, and that relator had operated the Short Line during a portion of the test period following May 1, 1915. It thus appears that the property of relator was under federal control from January 1, 1918, to June 29, 1918, inclusive, and was privately operated by relator from June 30, 1918, to July 14, 1919, inclusive.

On these facts, the Commission summarizes as follows: "Its original return to our order of March 4, 1920, covering operations over the old line (the Short Line) for the period from January 1, 1918, to July 14, 1919, showed a credit in its favor of $407,720.97. Excluding the deficit for the first six months of federal control, the return as filed would

indicate a net credit in its favor of $318,251.-39. Later the company amended its claim by combining for the test period the operations over the old line with operations over the line from Cripple Creek to Divide, which was owned and operated during that period by the Midland Terminal Railway Company. For the federal control period the company combined the operations over the line of the Midland Terminal from Cripple Creek to Divide, and including trackage rights over the Colorado Midland from Divide to Colorado Springs, with the minor operations over that portion of the old line which had remained open for operation. Within the federal control period, all operations from June 30, 1918, to December 31, 1918, were conducted by the company, and from January 1, 1919, to July 14, 1919, by the Midland Terminal, with the exception of the operations covering local traffic over the old line, which were conducted by the company. The consolidated return indicates a net credit in favor of the company of $317,048.34, computed on the basis of taxes paid, and $374,584.70, computed on the basis of tax accruals."

Section 204 of the Transportation Act, entitled "Reimbursement of Deficits During Federal Control," provided in general that a common carrier engaged in general transportation, which, during any part of the federal control period, competed for traffic or connected with a railroad under federal control, and which for the period that it operated under federal control sustained a deficit in operating income as compared with the operating income for a corresponding period of operation during the test period, the Interstate Commerce Commission should ascertain the difference in income so sustained, and the amount found should be certified by the Commission to the Secretary of the Treasury, who was authorized and directed to draw a warrant or warrants in favor of the carrier upon the Treasury of the United States. The act defined in detail the method to be pursued by the Commission in ascertaining the deficit, if any, which was due and payable to a railroad company coming within its provisions.

It is undisputed that plaintiff in this case comes within the provisions of section 204 of the Transportation Act. The only question involved is its right to recover under the terms of the act. The Commission, in its application of the law to the facts, refused to treat the railway lines operated by relator during the federal control period from July 1, 1918, to January 1, 1919, as a single "system of transportation." During this period the Short Line, Midland Terminal, and the

trackage rights over the Colorado Midland, were leased and operated by the relator company and operated as connecting lines in conducting relator's freight and passenger traffic between Cripple Creek and Colorado Springs.

The Commission held that section 204 recognizes a substantial identity of property as well as operation during the test and federal control periods; but, where a company operated substantially the same property during the federal control period which was operated by another company during the test period, the operations for the test period could be used as a basis for comparison. It refused, however, to apply that rule to the present case. It proceeded upon the false hypothesis that the connecting roads were separate lines of transportation, instead of a single "system of transportation." Accordingly relator was denied recovery for the reason, stated in the opinion, that relator carried its traffic, freight and passenger, during the test period, over the Short Line, and that, since this line was not in condition for use for through traffic during the federal control period, no basis for comparison existed and therefore there could be no recovery for that line.

Coming to the Midland line, which was operated as a through line during the federal control period, there could be no recovery, since a comparison of the operations over the Midland Terminal from Cripple Creek to Divide during the test period with the operations during the federal control period, owing to the increased traffic due to the destruction of the bridge on the Short Line, showed a very large credit to the government for the federal control period, which, of course, foreclosed any right of recovery as to that line.

The Commission held, as to the operations over the leased trackage of the Midland Terminal, that there exists no comparable basis for computing the net results by comparison between the operations of the Colorado Midland during the test period and the operations of relator under its trackage agreement during the federal control period, "without resort to arbitrary and unsupported assumptions." It then held that, where ascertainment, as in this instance, is impracticable, the case falls within the last sentence of paragraph (f) of section 204 as follows: "The case of a carrier which operated its railroad or system of transportation for less than a year during, or for none of, the test period, the foregoing computations shall not be used, but there shall be payable to such carrier its deficit in railway operating income for that

portion (as a whole) of the period of federal control during which it operated its own railroad or system of transportation."

Applying this provision of the statute to the separate operation of the trackage rights over the Colorado Midland during the federal control period, it found from relator's return that there had been a profit, instead of a deficit, in the income over and above the expense, and that in this view of the case there could be no recovery.

We have reviewed this case at considerable length, in order that the numerous errors committed by the Commission, growing out of its refusal to treat the combined lines as a "system of transportation," may become apparent. These errors, however, we are unable to correct in this proceeding. This is not a case where the Commission has, for any reason, refused to assume jurisdiction of the case, as in Kansas City Southern Railway Co. v. Interstate Commerce Commission, 40 S. Ct. 187, 252 U. S. 178, 64 L. Ed. 517; but it falls within our holding in U. S. ex rel., Abilene & Southern Railway Co. v. Interstate Commerce Commission, 8 F.(2d) 901, 56 App. D. C. ——. The Commission has construed the statute and applied its construction to the facts, and, however erroneous, its conclusions, under recent decisions of the Supreme Court, are beyond our jurisdiction to correct in this proceeding.

The judgment is affirmed, with costs.