GREAT NORTHERN RAILWAY COMPANY. *v.* UNITED STATES ET AL.

No. 612. Argued April 27, 1928.—Decided May 14, 1928.

*Mr. F. G. Dorety,* with whom *Messrs. Thomas Balmer* and *Fletcher Rockwood* were on the brief, for appellant.

The Commission's certificate is an " order " within the meaning of the Commerce Court and Urgent Deficiencies Acts. *I. C. C.* v. *Northern Pacific Ry Co.,* 216 U. S. 538; *I. C. C.* v. *D. L. & W. R. R. Co.,* 216 U. S. 531; *Southern Pacific* v. *I. C. C.,* 219 U. S. 433; *United States* v. *Diffenbaugh,* 222 U. S. 42; *United States* v. *B. & O. R. R. Co.,* 231 U. S. 274; *Tap Line Cases,* 234 U. S. 1; *Philadelphia & Reading Ry.* v. *United States,* 240 U. S. 334; *Central R. R.* v. *United States,* 257 U. S. 247; *United States* v. *New York Central,* 263 U. S. 603; *I. C. C.* v. *Union Pacific R. R.,* 222 U. S. 541; *United States* v. *Abilene & Southern Ry.,* 265 U. S. 274; *I. C. C.* v. *L. & N. R. R.,* 227 U. S. 88.

A few of the numerous cases in which the Court has held that it had jurisdiction, but declined to give the relief sought are *Intermountain Rate Cases,* 234 U. S. 476; *Los Angeles Switching Case,* 234 U. S. 234; *United States* v. *Pennsylvania R. R.,* 266 U. S. 191. A recent case of this nature is *C. C. C. & St. L. Ry.* v. *United States,* 275 U. S. 404.

Cases in which injunction has been denied because of lack of jurisdiction are cases in which the so-called order of the Commission did not change the status or obligations of any individual or body, and was, therefore, held to be not an order within the meaning of the statute. *Procter & Gamble* v. *United States,* 225 U. S. 282; *Hooker*

v. *Knapp,* 225 U. S. 302; *Lehigh Valley R. R. Co.* v. *United States,* 243 U. S. 412; *United States* v. *New River Coal Co.,* 265 U. S. 533; *United States* v. *Illinois Central. R. R.,* 244 U. S. 82; *United States* v. *Los Angeles, etc., R. R.,* 273 U. S. 299. See further, *United States* v *B. & O. R. R.,* 231 U. S. 274; *The Tap Line Cases,* 234 U. S. 1; *United States* v. *New York Central,* 263 U. S. 603.

It is not necessary that the act complained of constitute a command or a direction in order that the court may have jurisdiction. *Chicago Junction Case,* 264 U. S. 258; *Colorado* v. *United States,* 271 U. S. 153; *Texas* v. *Eastern Texas R. R. Co.,* 258 U. S. 204; *Home Furniture Co.* v. *United States,* 271 U. S. 456; *Venner* v. *Michigan Central. R. R. Co.,* 271 U. S. 127.

The situation is very similar to that in *Dayton-Goose Creek Ry.* v. *United States,* 263 U. S. 456.

It is true that the cases where the court has declined to take jurisdiction or has assumed jurisdiction under the Urgent Deficiencies Act, are all cases arising under the Interstate Commerce Act. These cases then throw no light upon the question whether the order must be made under the Interstate Commerce Act.

The right to enjoin unlawful acts or orders of administrative bodies or officials, has been recognized in *O. R. & N. Co.* v. *Fairchild,* 224 U. S. 510; *N. P. Ry.* v. *Department of Public Works,* 268 U. S. 39. It is obvious therefore that the right to injunction applies in a proper case to an unlawful order or act, either of the Commission or of any other administrative body purporting to act under any law whatever. The only question is whether the case at bar is a proper case for injunction, and not whether the order purports to be made under one Act or another.

Neither the Hepburn Act, nor the Commerce Court Act, nor the Urgent Deficiencies Act, restricts the jurisdiction of the courts to orders made under the Interstate Commerce Act. When Congress has conferred jurisdic-

tion on an inferior court in particular classes of cases, the court has jurisdiction in cases of that class which arise under statutes subsequently passed. *In re Metzger,* Fed. Cas. No. 9511. Just as the courts have power to review by injunction, orders of the Commission made under amendments to the Interstate Commerce Act passed subsequent to the Urgent Deficiencies Act (*Chicago Junction Case, supra; Colorado v. United States, supra; Texas v. Eastern Texas R. R. Co., supra; Venner v. Michigan Central R. R., supra*), so has the court jurisdiction to review by injunction, orders made by the Commission under any other Acts giving powers to it.

*Mr. Blackburn Esterline,* Assistant to the Solicitor General, with whom *Solicitor General Mitchell* was on the brief, for the United States.

The amended certificate issued by the Commission to the Secretary of the Treasury is not an " order." *Procter & Gamble* v. *United States,* 225 U. S. 282; *Lehigh Valley R. R.* v. *United States,* 243 U. S. 412; *United States* v. *Illinois Central R. R.,* 244 U. S. 82; *Delaware & Hudson* v. *United States,* 266 U. S. 438; *New York etc. R. R.* v. *United States,* 273 U. S. 652; *United States* v. *Los Angeles etc. R. R.,* 273 U. S. 299.

The amended certificate is not even directed to the Great Northern. Knowledge or notice of the certificate comes to it through a demand made by the Secretary of the Treasury. Even if the order is evidence in a suit against the Great Northern, it would seem that it would be time enough to assail its validity when the certificate is brought forward in the suit. Suits may not be brought before the specially constituted District Court under Urgent Deficiencies Act to suppress evidence or a cause of action. *Meeker* v. *Lehigh Valley,* 236 U. S. 412; *Mills* v. *Lehigh Valley,* 238 U. S. 473; *Spiller* v. *Atchison, T. & S. F.,* 253 U. S. 117; *St. Louis Southwestern* v. *Commission,* 264 U. S. 64; *Pittsburgh & West Va. Ry.* v. *United States,*

6 F. (2d) 646; *United States* v. *Los Angeles etc. R. R.,* *supra.*

The transaction is between the Great Northern and the United States exclusively. Consent that the United States may be sued in such a transaction in the specially-constituted District Court is not found in the Urgent Deficiencies Act and does not exist. *Minnesota* v. *Hitchcock,* 185 U. S. 373; *Oregon* .v. *Hitchcock,* 202 U. S. 60; *Illinois Central R. R.* v. *Public Utilities Comm'n,* 245 U. S. 493. The decree of the court would be no more than merely advisory, as in *Liberty Warehouse Co.* v. *Grannis,* 273 U. S. 70; *New Jersey* v. *Sargent,* 269 U. S. 328; *Fairchild* v. *Hughes,* 258 U. S. 126; *Massachusetts* v. *Mellon,* 262 U. S. 447; *Texas* v. *I. C. C.,* 258 U. S. 158.

In a suit to set aside an order of the Commission under Urgent Deficiencies Act, the United States is made by statute a necessary party, and this means that it is to. stand in judgment as representing the public. *Illinois Central R. R.* v. *Public Utilities Comm'n,* 245 U. S. 493. In this case, the United States is sued in a money transaction with which Great Northern alone is concerned.

*Mr. Daniel W. Knowlton,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

That special jurisdiction, created as an amendment to the Interstate Commerce Act, was intended solely for review of orders relating to commerce regulation directed to carriers subject to the regulatory authority, and was never intended to afford review of a certificate directed, not to the carriers subject to regulatory authority, but to the Secretary of the Treasury, and relating, not to matters of commerce regulation, but to a governmental guaranty significantly excluded by the Act of its creation, Transportation Act, 1920, from those portions of that Act that were named amendments to the Interstate Commerce Act.

*Los Angeles Valuation Case,* 273 U. S. 299; *Procter & Gamble* v. *United States,* 225 U. S. 282.

While the Urgent Deficiencies Act authorizes suits in name against the Government in respect of matters of commerce regulation, that authority cannot be consistently or harmoniously enlarged to embrace suits involving the public money, which are suits in substance as well as name, against the Government and, where authorized at all, are provided for before a special tribunal, or by jurisdiction conferred upon the district courts limiting the monetary amount of the claim.

The court's jurisdiction under the Urgent Deficiencies Act to enjoin orders of the Commission bears a reciprocal relationship to its jurisdiction to enforce such orders, and the Commission's certificate, directed to the Secretary of the Treasury rather than to the carriers, and being, moreover, for the payment of money, clearly falls outside the enforcement side of the court's special jurisdiction over regulatory orders and therefore should be reciprocally excluded from the enjoining side of the jurisdiction.

The fact that the guaranty section is in substance a gratuity, and the fact that its terms, agreed to by the carriers, clothe the Commission with broad discretion in the premises without provision for appeal from its determination, rebut any possible implication that the Government intended that the Urgent Deficiencies Act should constitute its consent to be sued in respect of the amount of its gift.

The Government's consent to this suit cannot be found in any other legislation providing for suits against the United States in the district courts.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit, under the Act of June 18, 1910, c. 309, 36 Stat. 539, as amended by Urgent Deficiencies Act of Octo-

ber 22, 1913, c. 32, 38 Stat. 208, 220, was brought by the Great Northern Railway Company against the United States, in the federal court for Minnesota, to annul two certificates issued by the Interstate Commerce Commission to the Secretary of the Treasury, pursuant to § 209 of Transportation Act, 1920, February 28, 1920, c. 91, 41 Stat. 456, 464–468, as amended by Act of February 26, 1921, c. 72, 41 Stat. 1145. The Company claims that these certificates are. orders of the Commission; that they were issued without authority of law; and that they are void. The United States and the Commission moved to dismiss on the ground that the certificates sought to be annulled are not orders of the Commission within the meaning of the Commerce Court and Urgent Deficiencies Acts; and that the United States had not consented to be sued. The case was heard before three judges who dismissed the bill for want of jurisdiction. 22 F. (2d) 865. Whether they erred in so doing is the only question presented by the appeal.

Certificates under § 209 are an incident of the termination of the federal control of the railroads on March 1, 1920. They are provided for in Title II of Transportation Act, 1920. By § 209(c) of that Act, the United States guaranteed to each company that its railway operating income for the following six months should be not less than one-half of the amount of the annual compensation to which it was entitled during the period of federal control. Paragraph (g) provided that: " The Commission shall, as soon as practicable after the expiration of the guaranty period, ascertain and certify to the Secretary of the Treasury the several amounts necessary to make good the foregoing guaranty. . . . ." Paragraph (h) provided for the issue, during the guaranty period, of certificates for payment on account, if the carrier furnishes an adequately secured contract to repay to the United

States any amount received in excess of that which shall be finally determined as the sum to which the carrier is entitled under the guaranty. Section 212, added by the Act of February 26, 1921, c. 72, 41 Stat. 1145, provided for payments on account after the expiration of the guaranty period, the Commission being authorized to " make its certificate for any amount definitely ascertained by it to be due, and . . . thereafter in the same manner make further certificates, until the whole amount due has been certified." Upon receipt of certificates the Secretary of the Treasury was directed ." to draw warrants in favor of each such carrier upon the Treasury of the United States, for the amount shown in such certificate as necessary to make good such guaranty."

Upon certificates of the Commission issued to the Secretary of the Treasury under paragraph (h), he paid the Company $6,500,000 in 1920. Upon certificate issued under § 212, he paid it $6,000,000 in 1921. Several years later, in the course of the proceedings for final settlement of the amount due the Company under § 209, the Commission issued to the Secretary of the Treasury the two certificates here in suit. Only the second of them is of importance. It certified that the total amount required to make good to the Company the guaranty provided for in § 209 was $11,170,214.02. *Guaranty Settlement with Great Northern Railway Co. et al.,* 99 I. C. C. 231; 111 I. C. C. 318. As the Secretary of the Treasury had paid $12,500,000 to the Company, he demanded reimbursement, as an overpa ment, of $1,329,785.98, being the difference between the aggregate amounts received by the Company and the total amount certified as payable under the guaranty. Pending settlement of that claim, the Government withheld payment to the Company of all amounts accruing for transportation services, but the payments were resumed upon the Company's deposit of Liberty bonds as

collateral. Thereupon, this suit was brought by the Company to annul the certificates and to restrain the Government from enforcing its claim by sale of the Liberty bonds or otherwise.

The function imposed upon the Commission by § 209 is solely that of determining the amount required to make good the Government's guaranty. It is not an exertion of the delegated power to regulate interstate commerce. It is an incident of the World War—a temporary, non-recurrent task, which might appropriately have been performed for the Treasury by its Comptroller or auditors, or by other trusted official. Congress selected the Commission for this service, doubtless, because of its special fitness. For the Commission had knowledge of railroads and experience in railroad accounting; it had the custody of the records of railroad operations; and its staff was competent to make speedily the necessary investigations.

Transportation Act, 1920, did not confer upon the Commission power to order anything in connection with the issue of the certificates. There is in the certificates no direction, no word of command. They are the recital of a finding of fact. They are addressed to the Secretary of the Treasury; and only to him. The form of the certificate expresses appropriately the character of the service performed by the Commission. The final certificate does not purport to declare that the carrier is indebted to the United States in any sum. It states the total amount required of the United States to make good the guaranty and the aggregate amount theretofore certified. It discloses the facts, but does not certify that there was an overpayment.[1] Congress distinguished clearly, in fram-

---

[1] The certificate reads (111 I. C. C. 318, 338–339):

" To THE SECRETARY OF THE TREASURY OF THE UNITED STATES: . . .

" 2. The commission has ascertained, and hereby certifies to the Secretary of the Treasury, that the amount necessary to make good

ing Transportation Act, 1920, between provisions which were amendments of the Interstate Commerce Act and those which, while relating to railroads, were not. The amendments were grouped under Title IV. The provisions here involved, which related solely to the termination of federal control, were grouped under Title II. Those which provided for the Railroad Labor Board, under Title III. Because issuing certificates is not a part of the Commission's delegated power to regulate commerce and is not an incident of such regulation, the special remedy provided by the Urgent Deficiencies Act is not available to review the legality or correctness of its action in doing so.

The Company points out that the action of the Commission here in question was affirmative, not negative, as in *Procter & Gamble Co.* v. *United States,* 225 U. S. 282; that it relates to a matter of substance and not merely to a step in procedure, as in *United States* v. *Illinois Central R. R. Co.,* 244 U. S. 82; that it determines legal rights and

---

to said Great Northern Railway Company the guaranty provided by section 209 of the transportation act, 1920, is $11,170,214.02; . . .

"3. The commission has heretofore certified to the Secretary of the Treasury as advances under section 209(h) to said Great Northern Railway Company an aggregate amount of $6,500,000, as follows:

Certificate No. 65, June 25, 1920.............. $3,000,000

Certificate No. 225, August 31, 1920....:...... 2,000,000

Certificate No. 276, November 4, 1920......... 1,500,000

and as partial payment to said Great Northern Railway Company under section 209(g), as amended by section 212, an amount of $6,000,000 on March 1, 1921, under certificate No. A–329.

"4. The commission has made final determination as aforesaid of the amount of the guaranty provided for by section 209 of the transportation act, 1920.

"Dated this 8th day of June, 1926."

The two certificates here involved deal with the same subject matter. The issue of the second canceled the earlier one, which differed as to the amount due to the Company and which had contained a certification of the fact of overpayment. 99 I. C. C. 231, 234, 235.

obligations, and is not simply the tentative or final report of an investigation, as were the orders which we declined to review in *Delaware & Hudson Co.* v. *United States,* 266 U. S. 438, and *United States* v. *Los Angeles & Salt Lake R. R. Co.,* 273 U. S. 299; and that its being entitled as a certificate rather than as an order is not fatal to the equity jurisdiction of the District Court under the Urgent Deficiencies Act. Compare *Chicago Junction Case,* 264 U. S. 258, 263; *Colorado* v. *United States,* 271 U. S. 153; *Home Furniture Co.* v. *United States,* 271 U. S. 456. But these considerations are irrelevant. For the inapplicability of the special remedy given by the Urgent Deficiencies Act is due to the fact that the certificate deals with a subject matter not within the scope of the Commission's duty to regulate commerce, and hence, not within the purview of that remedy. In this respect, among others, it differs from the order involved in *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456.

It is said that, unless this remedy is available, the Company may be without redress. The argument is that the determination by the Commission of the amount required to make good the guaranty, may be likened to an award of arbitrators; that the ground of the attack upon the certificates is that they were made under a mistake of law; and that an award can be set aside for mistake of law only in equity, *Hartford Fire Insurance Co.* v. *Bonner Mercantile Co.,* 44 Fed. 151; *McLaurin* v. *McLauchlin,* 215 Fed. 345. We have no occasion to enquire whether a remedy at law or some other remedy in equity is available. The mere fact that the certificate may be conclusive, if it be a fact, would not entitle the Company to a judicial review. Compare *United States* v. *Babcock,* 250 U. S. 328, 331; *Work* v. *Rives,* 267 U. S. 175. We find no reason for thinking that because Congress confided to the Commission the task of certifying the amount to be paid to carriers from the public treasury, as an incident to the World

War, it thereby consented that the United States should be sued in the special proceeding in equity devised long before to control the Commission's execution of its regular functions in enforcing the Interstate Commerce Act.

*Affirmed.*