## MALLORY COAL CO. et al. v. NATIONAL BITUMINOUS COAL COMMISSION.

### No. 7178.

United States Court of Appeals for the District of Columbia.

Decided Aug. 1, 1938.

Robert E. Quirk, of Washington, D. C., and J. V. Norman, of Louisville, Ky., for petitioners.

Robert W. Knox, Robert L. Stern, and Thomas O'Brien, all of Washington, D. C., for respondent.

By leave of Court, Henry S. Brainard, of Cleveland, Ohio, and John McDill Fox, Allen Coe, and. Clarence A. Miller, all of Washington, D. C., as amici curiae.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

MILLER, Associate Justice.

Petitioners are corporations engaged in the production, sale and shipment of bituminous coal in interstate commerce, and are members in good standing of the Bituminous Coal Code, promulgated by respondent, under the provisions of the Bituminous Coal Act of 1937.[1]

By its order, dated July 15, 1937, pursuant to authority given by Section 10 of the Bituminous Coal Act of 1937, 50 Stat. 88, 15 U.S.C.A. § 840,[2] the Commission required:

"1. That each producer of bituminous coal, whether or not a code member and whether or not engaged in commerce in

---

[1] April 26, 1937, c. 127, 50 Stat. 72, 15 U.S.C.A. § 828 et seq.

[2] "§ 840 [Sec. 10]. (a) The Commission may require reports from producers and may use such other sources of information available as it deems advisable, and may require producers to maintain a uniform system of accounting of costs, wages, operations, sales, profits, losses, and such other matters as may be required in the administration of this Act. No information obtained from a producer disclosing costs of production or sales realization shall be made public without the consent of the producer from whom the same shall have been obtained, except where such disclosure is made in evidence in any hearing before the Commission or any court and except that such information may be compiled in composite form in such manner as shall not be injurious to the interests of any producer and, as so compiled, may be published by the Commission.

"(b) Any officer or employee of the Commission or of any district board who shall, in violation of the provisions of subsection (a), make public any information obtained by the Commission or the district board, without its authority, unless directed by a court, shall be deemed guilty of a misdemeanor, and, upon con-

coal which is subject to the provisions of Section 4 of said Act, shall file, in duplicate, complete reports showing the total costs of the tonnage produced and realization prices derived from the sale of coal, all as more fully set forth and specified in the Commission's Cost Forms No. 1 and No. 1-A, such reports to be made separately for each mine and to include all coal produced during the calendar year 1936 and all coal sold during the same period.

\* \* \* \* \* \*

"4. Each producer shall, within fifteen (15) days from the date of receipt of a copy of this order and of said forms, file the required reports, duly verified, with the statistical bureau of the Commission in the district within which the mine or mines reported upon are located."

The Commission's order of July 15, 1937, contained also the following injunction:

"The Commission directs specific attention to the provisions of Section 10 of said Act relating to the confidential nature of the reports required under this order and further gives notice that the penalties provided for non-compliance with this order by the producer will be strictly enforced."

Within fifteen days after receipt of copies of the order and forms, petitioners filed verified reports as required. The forms—supplied by the Commission—upon which these reports were made bore at the top, in bold type, the following statement: "This report is required under the provisions of the Bituminous Coal Act of 1937 and is therefore confidential."

On March 30, 1938, the Commission issued a ruling reading as follows:

"RULING

"Pursuant to the provisions of Section 4, Part 2(a) and Section 10(a) of the Bituminous Coal Act of 1937, [15 U.S.C.A. §§ 833(a), 840(a)] the Commission ob-

tained from producers detailed information with respect to individual costs of production of the coals of such producers in the calendar year 1936 to be used in connection with the proposal and establishment of minimum prices of coals of code members. Such records are held by the various Statistical Bureaus of the Commission as the confidential records of the producers furnishing the information.

"Section 10(a) of the Act provides:

" '\* \* \* No information obtained from a producer disclosing costs of production or sales realization shall be made public without the consent of the producer from whom the same shall have been obtained, *except where such disclosure is made in evidence in any hearing before the Commission* or any court and except that such information may be compiled in composite form in such manner as shall not be injurious to the interests of any producer and, as so compiled, may be published by the Commission.'

"The Commission construes the foregoing provision as permitting the introduction in evidence at a hearing before the Commission of the aforesaid cost data of the individual producers.

"The Commission will in the immediate future give public notice of a hearing to be held to determine the weighted average of the total cost of the tonnage for each minimum price area in the calendar year 1936, adjusted as provided by Section 4, Part 2(a) of the Act, at which hearing the aforesaid information obtained from producers with respect to individual costs of production of the coals of such producers in the calendar year 1936 will be made available for introduction in evidence to support the determinations of the District Boards of the total costs of the ascertainable tonnage produced in their respective districts in the calendar year 1936, and the necessary adjustments thereto and to support the Commission's determination of the weighted average of

---

viction thereof, shall be punished by a fine not exceeding $500, or by imprisonment not exceeding six months, or by both fine and imprisonment, in the discretion of the court.

"(c) If any producer required by this Act or the code or regulation made thereunder to file a report shall fail to do so within the time fixed for filing the same, and such failure shall continue for fifteen days after notice of such default, the producer shall forfeit to the United States the

sum of $50 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States, and shall be recoverable in a civil suit in the name of the United States, brought in the district where the producer has his principal office or in any district in which he shall do business. It shall be the duty of the various district attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeiture."

the total costs of the tonnage for each minimum price area in the calendar year 1936 adjusted as aforesaid."

Section 4, Part 2(a), 50 Stat. 77, 15 U.S.C.A. § 833(a)—referred to in the Commission's ruling of March 30, 1938, provides that:

"(a) All code members shall report all spot orders to such statistical bureau hereinafter provided for as may be designated by the Commission and shall file with it copies of all contracts for the sale of coal, copies of all invoices, copies of all credit memoranda, and such other information concerning the preparation, cost, sale, and distribution of coal as the Commission may authorize or require. All such records shall be held by the statistical bureau as the confidential records of the code member filing such information."

On May 11, 1938, petitioners filed with the Commission a petition which asserted that the construction placed upon Section 10(a), by its ruling of March 30, 1938, was erroneous and contrary to the intent of the Act; that the reports filed by petitioners were filed in reliance upon the confidence imposed by the provision of Section 10(a) and Section 4, Part 2(a) of the Act; that knowledge of their costs of doing business constitutes a valuable and private right of which they cannot be deprived without their consent; that if the Commission makes such cost reports available to interested parties as proposed in its ruling, petitioners will suffer irreparable injury; and prayed that the Commission vacate its ruling and revoke its construction of Section 10(a) of the Act.

On May 13, 1938, the Commission promulgated a "Notice of and Order for Hearing" reading in part as follows:

". . . NOTICE IS HEREBY GIVEN that the above entitled proceeding is assigned for hearing before the Commission, on May 25, 1938, at 10:00 o'clock a. m. at the Hearing Room of the Commission, 734 Fifteenth Street, N. W., Washington, D. C., at which time an opportunity will be afforded interested parties to be heard.

"The Secretary of the Commission is, forthwith, directed to mail a copy of this Notice of Hearing to the petitioners above named, to each code member and to the Consumers' Counsel, and shall cause a copy to be published in the Federal Register. A copy of the aforesaid petition is on file and available to interested parties for inspection at the Office of the Secretary of the Commission."

On May 25th and 26th the matter was heard by the Commission, appearances were entered on behalf of petitioners and numerous interveners, witnesses were examined, exhibits were introduced into evidence, and the legal questions involved were argued by counsel.

On June 1, 1938, the Commission filed findings of fact and an opinion, and on the same day entered an order as follows:

"NOW, THEREFORE, It is ordered:

"1. That the petition of the Mallory Coal Company, et al., filed in Docket No. 13, and the petition of the Rochester and Pittsburgh Coal Company, filed in Docket No. 14, be and the same are hereby denied and dismissed.

"2. That the Secretary of the Commission be and he is hereby directed to cause the individual cost returns of the producers, as above described, to be made available for inspection by interested parties in the final hearing in the establishment of minimum prices and marketing rules and regulations, so that the same will be available for introduction in evidence if and when required.

"3. That the Secretary be and he is hereby directed to mail a copy of this order to each of the above named petitioners, and to all parties who filed petitions to intervene."

The petition for review in this court purports to be filed pursuant to the provisions of Section 6(b), Part 2 of the Bituminous Coal Act of 1937, 50 Stat. 85, 15 U.S.C.A. § 836(b),[3] and the prayer for relief is as follows:

"That pending final determination on this petition the Court enter an order which

---

[3] "(b) Any person aggrieved by an order issued by the Commission in a proceeding to which such person is a party may obtain a review of such order in the Circuit Court of Appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part. * * * Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, mod-

will modify, set aside and stay the operation of the order of the Commission in dockets 13 and 14 made and entered June 1, 1938, and thereby prohibit the Commission from making available for inspection to interested parties the cost data and the information hereinbefore described;

"That the Court will review the record, order and proceeding before the National Bituminous Coal Commission in dockets 13 and 14, hereinbefore described, and enter a decree which will modify, set aside and stay the operation of the order of the Commission made and entered June 1, 1938.

"That your petitioners have such other and further relief in the premises as to this Honorable Court may seem just and proper."

The jurisdiction of this court is challenged by the Commission, as well as by the Consumers' Counsel, and by other *amici curiae*. Whether the court has jurisdiction depends upon whether the order from which relief is sought is reviewable under the provisions of Section 6(b), Part 2 of the Act.

It may be argued that the language of Section 6(b) is broad enough to permit judicial review of any order of the Commission. The language of the section is: "Any person aggrieved by *an order* issued by the Commission in a proceeding to which such person is a party may obtain a review of such order * * *." [Italics supplied] But this argument has been disposed of to the contrary by the Supreme Court in a number of cases. In Federal Power Comm. v. Metropolitan Edison Co., 58 S.Ct. 963, 82 L.Ed. 948, decided May 23, 1938, the Court denied the reviewability of procedural orders there involved and went on to say (page 967):

"There are persuasive analogies in the construction of provisions for the review of the orders of other administrative bodies. The Urgent Deficiencies Act of October 22, 1913 [28 U.S.C.A. § 47] provides for cases brought to enjoin, set aside, or suspend '*any order*' of the Interstate Commerce Commission. But this Court has held that 'there are many orders of the Commission which are not judicially reviewable under this provision.' * * * With respect to other regulatory bodies, it has been held that mere preliminary or procedural orders are not within the statutes providing for review by the Circuit Court of Appeals."

Moreover, the fact that Congress did not intend all orders of the Commission to be reviewable under Section 6(b) is revealed by the language used in Section 2(a), 50 Stat. 72, 73, 15 U.S.C.A. § 829(a): "No order *which is subject to judicial review under section 6* [section 836], and no rule or regulation which has the force and effect of law, shall be made or prescribed by the Commission, unless * * *." [Italics supplied] If Congress had so intended it could have easily omitted the qualifying, italicized words. It is apparent, also, from the language above quoted, that if the Commission uses orders to promulgate rules and regulations having the force and effect of law—to say nothing of other rules and regulations which may have less effect—the adoption of such a practice by the Commission does not *ipso facto* extend the jurisdiction of this court.

Several tests have been used by the courts to determine whether particular orders were reviewable under similar provisions in other statutes. One of these, as already indicated by reference to the Metropolitan Edison Case, is whether the order sought to be reviewed is one of a definitive character, dealing with the merits of a controversy, or whether it is merely preliminary and procedural in character. The Court said:

"The argument proceeds on the view that the order of January 26, 1937, despite its preliminary character, was a reviewable order subject only to the requirement that an application for rehearing should first be made. Reliance is placed on Section 313(b) of the Federal Power Act [16 U.S.C.A. § 825l] that 'Any party to a

ify, and enforce or set aside such order, in whole or in part. No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged below. The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive. * * * The judgment and decree of the court, affirming, modifying, and enforcing or setting aside, in whole or in part, any such order of the Commission shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in sections 239 and 240 of the Judicial Code, as amended (U.S.C., title 28, secs. 346 and 347)."

proceeding under this Act [chapter] aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the Circuit Court of Appeals.' But neither this language, nor that of Section 313(a), should be construed as authorizing a review of every order that the Commission may make, albeit of a merely procedural character. Such a construction, affording opportunity for constant delays in the course of the administrative proceeding for the purpose of reviewing mere procedural requirements or interlocutory directions, would do violence to the manifest purpose of the provision.

\*    \*    \*    \*    \*    \*

"The provision for review thus relates to orders of a definitive character dealing with the merits of a proceeding before the Commission and resulting from a hearing upon evidence and supported by findings appropriate to the case."

In the present case, as in the Metropolitan Edison Case, the order sought to be reviewed was merely preliminary and procedural. In both cases the order provided for the making available—for examination and introduction in evidence—of confidential information concerning business operations, as part of an investigation looking toward future action by the Commission. In the present case, the information had been already deposited with the Commission under the expectation—it is contended—that it would be kept confidential; in the other case, part of the information had been deposited, under protest, and part had not yet been produced.

In this case the general ruling of March 30, 1938, and the order of June 1, 1938, were both preliminary steps in a comprehensive procedural program outlined by the Commission for the carrying out of its major function, i. e., the establishment of minimum prices and the provision of rules and regulations for the marketing of bituminous coal throughout the United States. These preliminary steps were designed to make available at the general, country-wide hearings projected by the Commission, the information thought necessary to proceed intelligently and fairly in establishing prices and setting up marketing rules and regulations.

In American Sumatra Tobacco Corp. v. Securities and Exchange Comm., 68 App. D.C. 77, 93 F.2d 236, relied upon by petitioners in support of jurisdiction of this court, the orders appealed from were—unlike that of the present case—definitive in character. The Securities and Exchange Act requires a corporation applying for registration to file certain information. Petitioners in that case did so file. Section 24(b) of that Act, 48 Stat. 901, as amended, 49 Stat. 704, 15 U.S.C.A. § 78x (b), provides:

"Any person filing any such application, report, or document may make written objection to the public disclosure of information contained therein, stating the grounds for such objection, and the Commission is authorized to hear objections in any such case where it deems it advisable. The Commission may, in such cases, make available to the public the information contained in any such application, report, or document only when in its judgment a disclosure of such information is in the public interest; \* \* \*"

Petitioners made written objection as required; the Commission held hearings; found that disclosure of the information involved was in the public interest; and denied each application for confidential treatment. The orders had no procedural character and were preliminary to nothing.

The test used in that case was whether the order in question was "a judgment entered on a state of facts and affecting only one person" or instead an order which was intended to operate generally.[4] It is clear that the ruling of March 30, 1938, standing alone, affected generally all producers of bituminous coal in the United States—code-members and non-code-members alike—and did not constitute a reviewable order. It is clear also that if, without notice, hearing and findings, an order had been entered by the Commission merely putting into effect its ruling of March 30, 1938, it would not have constituted a reviewable order; even though a petition to change the ruling had been filed, as in the case of Third Avenue Ry.

---

[4] "We are not concerned here with an administrative ruling such as was made in Third Avenue Ry. Co. v. Securities and Exchange Comm., (C.C.A.), 85 F.2d 914, but with action which operates particularly rather than generally—with a judgment entered on a state of facts and affecting only one person." American Sumatra Tobacco Corp. v. Securities and Exchange Comm., 68 App.D.C. 77, 80, 93 F.2d 236, 239.

Co. v. Securities and Exchange Comm., 2 Cir., 85 F.2d 914. In our opinion the procedure adopted by the Commission in response to the petition challenging its ruling in the present case, while more formal than that adopted in the Third Avenue Ry. Case, did not produce a different result, for the order in each case was intended to operate generally upon all producers, and did not constitute a judgment affecting only one person.

█ It may perhaps be necessary to limit the test used in the Sumatra Case in its application to judicial review under the National Bituminous Coal Act, on the theory that as to some types of orders—general rather than particular in their effect—which are entered by the Coal Commission, judicial review may be available. However, there is no doubt that the test may properly be used with reference to *procedural* orders of general application. The order involved in the Third Avenue Ry. Case was both general and procedural in character, as is the order sought to be reviewed in the present case. The order as finally entered on June 1, 1938, following notice, hearing and findings, contained only two essential provisions: (1) A denial and dismissal of the petition—the same action as was taken in Third Avenue Ry. Co. v. Securities and Exchange Comm., supra, although no formal order was entered in that case; (2) a direction to the Secretary of the Commission that he "cause the individual cost returns of the producers, as above described [all producers of bituminous coal in the United States], to be made available for inspection by interested parties in the final hearing in the establishment of minimum prices and marketing rules and regulations, so that the same will be available for introduction in evidence if and when required; . . ." which direction constituted no more than a reaffirmance of the general ruling of March 30, 1938. In this respect, also, the situation of the present case resembles much more closely that of the Metropolitan Edison Case than that of the Sumatra Case.

█ Another test which has been used in some of the cases is whether the order sought to be reviewed resulted from a proceeding in which notice of hearing was given, a hearing was held and findings of fact were made in support of the order. While it is proper to look to such indicia as notice, hearing and findings, for guidance in determining whether an order is reviewable, they are not alone controlling. An administrative body might conceivably decide to give notice, hold hearings, and prepare findings and—based thereon—enter orders regarding such matters as the issuing of subpoenas, taking depositions, employing reporters, and preparing calendars. But by so doing it would not make such an order reviewable; nor would such a set of circumstances constitute a *proceeding* within the contemplation of Section 6(b), Part 2 of the Act.

█ In the present case the fact that the Commission may have been persuaded by petitioners—or may have, itself, mistakenly believed—that the matter was one of such importance as to require the entering of a reviewable order, could not give such effect to an order which was in reality merely preliminary and procedural, and designed to operate generally rather than particularly. Consequently, such action, even though consented to by all parties, could not give jurisdiction to this court, for an appellate court can acquire jurisdiction only by authority of law.[5]

But we do not suggest that the Commission was so persuaded or that it acted under a misconception of the meaning of the Act. Apparently the Commission acted in the belief that its ruling of March 30, 1938, could not be made effective except by following the procedure of notice, hearing and findings. And the very unusual language of Section 2(a) seems to require it, even for the making and prescribing of procedural rules and regulations. That section provides that:

" * * * No order which is subject to judicial review under section 6 [section 836], *and no rule or regulation which has the force and effect of law,* shall be made or prescribed by the Commission, unless it has given reasonable public notice of a hearing, and unless it has afforded to interested parties an opportunity to be heard, and unless it has made findings of fact." [Italics supplied]

█ Perhaps the language italicized was intended to apply only to the "marketing rules and regulations," designed to regu-

---

[5] Woodmen of the World Life Ins. Ass'n v. Federal Communications Comm., 69 App.D.C. 87, 99 F.2d 122, and cases there cited.

late and coordinate prices and trade practices, as provided under Part 2 of the Act. However, it is a well accepted principle that rules of practice, pleading, procedure and evidence promulgated by an administrative agency under proper legal authorization have the force and effect of law.[6] The ruling of March 30, 1938, and the order of June 1, 1938, seem to come within that principle; hence within the literal meaning of the section.

■ If the italicized language of Section 2(a) was intended to have such sweeping effect, it constitutes a striking departure from previous legislative requirements and an interesting anticipation of recent proposals to subject all such rules and regulations of administrative agencies to public hearings and opportunity for objection by interested persons.[7] It is not necessary for us to consider that interesting question,[8] however—except to point out that such an interpretation of Section 2(a) provides a complete and reasonable explanation of the Commission's action—because the decisive fact which appears upon a reading of the quoted language is that not only does it require notice, hearing and findings with respect to reviewable orders but also with respect to rules and regulations having the force and effect of law. Thus, the very language which requires the use of that procedure in both cases, expressly distinguishes between orders which are subject to judicial review and those which are used to promulgate rules and regulations.

■ We held in the Sumatra Case that the order of the Commission might be subjected to review even though no hearing was held and no findings made to support the order, on the theory that under the circumstances of that case it was the duty of the Commission to hold a hearing and make findings. The failure, therefore, of an administrative agency to comply with its duty in this respect will not cut off the privilege and power of judicial review. In the same way, the action of such an agency in holding a hearing and making findings, under circumstances which do not call for such procedure, will not give a resulting order reviewable character, when otherwise it would not be subject to review. Thus, it is not the mere arbitrary occurrence of notice, hearing and findings—or the absence thereof—which determines whether an order is reviewable, but rather the fact that the order is of such character that it should have been preceded by a hearing and supported by findings.

■ Another barrier which stands in the way of appellate jurisdiction in the present case is the provision of Section 6(b) of the National Bituminous Coal Act, which reads, "No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged below." The record fails to reveal that any objection was urged below to the order from which this appeal purports to be taken. If it be contended that an objection was taken to the "ruling" then the answer is that it was not an order, and petitioners do not claim to be appealing therefrom. The purpose of Congress in incorporating the quoted language into the Act was apparently to secure to the Commission an opportunity to correct its errors, when attention is

---

[6] See Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157, 64 L.Ed. 297; United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 61 L.Ed. 926; United States v. Birdsall, 233 U.S. 223, 231, 34 S.Ct. 512, 58 L.Ed. 930; Red River Broadcasting Co. v. Federal Communications Comm., 69 App.D. C. 3, 98 F.2d 282; Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135.

[7] See Report of the Special Committee on Administrative Law, 62 A. B. A. Rep. 789, 790; Administrative Law Recommendations, Some Issues Involved, 3 Fed. B. A. J. 105; McGuire, Judicial Reviews of Administrative Decisions, 26 Georgetown L. J. 574, 601.

[8] It may well be argued that to adopt such a construction would hinder the efficient enforcement of the Act and lead to absurd results in the light of settled administrative practices. An established rule of statutory construction enjoins courts from attributing to the legislature a construction which leads to absurd results. In re Chapman, 166 U.S. 661, 667, 17 S.Ct. 677, 41 L.Ed. 1154; United States ex rel. Anderson v. Anderson, 8 Cir., 76 F.2d 375, 378; Red River Broadcasting Co. v. Federal Communications Comm., supra note 6. Consequently, perhaps the National Bituminous Coal Act should be so construed as to permit the Commission to make procedural and evidential rules summarily, and to limit the requirement of a public hearing to the adoption of rules of a different character, such as those governing the marketing of coal.

properly called thereto.[9] In the Federal Power Act the same result was accomplished by the language of Section 313(a), 16 U.S.C.A. § 825l(a), as follows: "No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon." In Federal Power Comm. v. Metropolitan Edison Co., supra, it appeared that the petitioners had filed a petition for rehearing before the Commission and it had been granted. However, the objections raised in the petition for rehearing had not been passed upon by the Commission when the matter came before the Circuit Court of Appeals. It was conceded by the petitioners that "until the Commission has made an order determining those objections, respondents will not be in a position to perfect an appeal to the Circuit Court of Appeals * * *." The Supreme Court said:

"The argument is that the Circuit Court of Appeals could intervene to protect its prospective appellate jurisdiction. We are of the opinion that this contention is unsound and that *the Circuit Court of Appeals in the circumstances disclosed had no appellate jurisdiction to protect.*" [Italics supplied]

The situation is the same in the present case. Provision has been made by the Commission, pursuant to authority granted by Section 2(a) of the Act, for procedures which might have been used by petitioners for the purpose of objecting to the order.[10] They were not used. Consequently, there is no appellate jurisdiction and no occasion for judicial review.

Underlying all these tests of appellate jurisdiction is the fundamental requirement that the person seeking review must first have exhausted his administrative remedy. If the order in the particular case is definitive rather than preliminary or procedural; if the order operates particularly upon the person seeking review, rather than upon the world generally or upon a large group of interested persons; if the order was entered in a proceeding, adversary in character, after notice given, with a hearing at which witnesses were examined and points of law argued, and in which findings of fact were made; if a petition for rehearing was filed urging, upon the Commission, the objection to the order now urged for the consideration of the court; each of these circumstances—and more particularly all of them together—may indicate that the administrative remedy has been exhausted and that it is time for judicial review. Until that time comes, the matter should remain in the control of the administrative agency. Short cuts to judicial review are not intended by Congress or encouraged by the courts. Instead, the person who claims to have been aggrieved is required to seek and exhaust his remedy even though in a particular case no remedy is specifically provided (Goldsmith v. Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 217, 70 L.Ed. 494); and even though he may believe that his search will be futile. Red River Broadcasting Co. v. Federal Communications Comm., 69 App.D.C. 3, 98 F.2d 282, cert. denied, 59 S.Ct. 86, 83 L.Ed. ——, and cases there cited.

Moreover, the fact of irreparable injury and lack of relief therefor is not sufficient to establish the privilege of judicial review of administrative action.[11]

**9** Red River Broadcasting Co. v. Federal Communications Comm., supra, note 6; Saginaw Broadcasting Co. v. Federal Communications Comm., 68 App.D.C. 282, 96 F.2d 554; Southland Industries, Inc., v. Federal Communications Comm., 69 App.D.C. 82, 99 F.2d 117.

**10** Rule XX a, c, d, National Bituminous Coal Commission.

"a. Petition, Filing, Service.—An application for further hearing in a proceeding before final submission, for reopening a proceeding after final submission, or for rehearing, reargument, or reconsideration after decision must be made by petition stating specifically the grounds relied upon, filed with the Commission and served by the petitioner upon all parties to the proceeding or their attorneys."

"c. Specification of Errors.—If the petition be for rehearing, reargument, or reconsideration, the matters claimed to have been erroneously decided must be specified and the alleged errors briefly stated. If the order of the Commission is sought to be vacated, reversed, or modified by reason of matters which have arisen since the hearing, or of consequences which would result from compliance therewith, the matters relied upon by the petitioner must be set forth in the petition.

"d. Time of Filing.—A petition for rehearing, reargument, reconsideration, or modification of an order must be filed within 30 days after service of the order therein."

**11** Newport Electric Corp. v. Federal Power Comm., 2 Cir., 97 F.2d 580.

This has been many times held in cases in which mandatory or injunctive relief has been refused against administrative bodies or officers.[12] It has been held also in cases of orders of the Interstate Commerce Commission.[13]

Petition dismissed.

---

[12] United States ex rel. Chicago Great Western R. Co. v. Interstate Commerce Comm., 294 U.S. 50, 62, 55 S.Ct. 326, 331, 79 L.Ed. 752; United States ex rel. Kansas City Southern Ry. Co. v. Interstate Commerce Comm., —— App.D.C. ——, 98 F.2d 268, and cases there cited; Proctor & Gamble Co. v. Coe, 68 App.D. C. 246, 96 F.2d 518; cert. denied 59 S.Ct. 65, 83 L.Ed. ——.

[13] Piedmont & Nor. Ry. Co. v. United States, 280 U.S. 469, 476, 477, 50 S.Ct. 192, 193, 194, 74 L.Ed. 551; Procter & Gamble Co. v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed. 1091; Great Northern Ry. Co. v. United States, 277 U.S. 172, 182, 48 S.Ct. 466, 467, 72 L. Ed. 838.