## UTAH FUEL CO. ET AL. *v.* NATIONAL BITUMINOUS COAL COMM'N ET AL.

No. 528. Argued January 3, 1939.—Decided January 30, 1939.

*Mr. J. V. Norman,* with whom *Mr. Robert E. Quirk* was on the brief, for petitioners.

*Solicitor General Jackson,* with whom *Assistant Attorney General Arnold,* and *Messrs. Robert L. Stern* and *Hugh B. Cox* were on the brief, for respondents.

By leave of Court, *Mr. Clarence A. Miller* filed a brief on behalf of the Aberdeen & Rockfish Railroad Co. et al., as *amici curiae,* in support of respondents.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

Petitioners are producers—engaged in the business of mining coal, and members of the "Bituminous Coal Code,"—that is "producers accepting membership in the Code." The National Bituminous Coal Commission, created by Act April 26, 1937 (Ch. 127, 50 Stat. 72), purporting to proceed under § 10 (a), on July 15, 1937 issued Order No. 15 which directed each producer of bituminous coal to file within fifteen days complete report showing for each mine detailed cost of tonnage produced and realization prices derived from sale, during 1936. This notice concluded—

"The Commission directs specific attention to the provisions of Section 10 of said Act relating to the confidential nature of the reports required under this order and further gives notice that the penalties provided for

non-compliance with this order by the producer will be strictly enforced."

Approved forms were distributed to producers for returns to the order. They contained the following in bold type—"This report is required under the provisions of the Bituminous Coal Act of 1937 and is therefore confidential." Petitioners made returns upon these forms.

March 30, 1938, the Commission announced that thereafter it would give public notice of a hearing to determine the weighted average of total cost of the tonnage of coal in the calendar year 1936 adjusted, etc. Further, that upon such hearing the information obtained from individual coal producers through Order 15 would be made available for inspection and introduction in evidence; that § 10 (a) of the Act was construed to authorize such disclosure.

Petitioners made formal objection to the March 30 action but the Commission after consideration announced adherence and ordered—

·"That the Secretary of the Commission be and he is hereby directed to cause the individual cost returns of the producers, as above described, to be made available for inspection by interested parties in the final hearing in the establishment of minimum prices and marketing rules and regulations, so that the same will be available for introduction in evidence if and when required."

Deeming this proposed action unauthorized and relying upon § 6 (b) of the Act, one of the present petitioners with others asked review in the Court of Appeals, District of Columbia. That court held the challenged action was not reviewable by it and dismissed the petition August 1, 1938. *Mallory Coal Co. v. National Bituminous Coal Comm'n,* 69 App. D. C. 166; 99 F. 2d 399. August 31, 1938, the Commission ordered its secretary to make available for inspection to "interested parties who have

filed appearances in this proceeding," petitioners' cost, etc., reports returned under Order 15.

September 7, 1938 petitioners by bill filed in the District Court, District of Columbia, sought an injunction against the threatened disclosure. This set out the foregoing facts, stated that no adequate relief could be had elsewhere, and that petitioners would sustain immediate and irreparable damage if their reports were publicized. It further averred that the Commission's proposed action was unauthorized, arbitrary, unreasonable, and in flagrant violation of the statute also the promise of privacy inferable from Order 15 and the forms used for returns thereto.

The trial court held "the bill of complaint fails to state a cause of action in that the acts of the defendants sought to be enjoined are authorized by and not in violation of the Bituminous Coal Act," and dismissed it upon motion. The Court of Appeals concluded the District Court had no jurisdiction over the controversy and upon that ground approved the dismissal. 101 F. 2d 426. The matter is here by certiorari.

We are unable to accept the view of the Court of Appeals. The District Court correctly ruled that the bill fails to state a cause of action and for that reason properly directed the bill dismissed.

A question cognate to the one here presented was before us in *Shields* v. *Utah Idaho Central Railroad Co.*, 305 U. S. 177, decided December 5, 1938, the date of the Court of Appeals' decision herein. We there declared, although determination by the Interstate Commerce Commission that a railroad was not "interurban" did not constitute an "order" reviewable under the Urgent Deficiencies Act of October, 1913,[1] nevertheless in the circumstances disclosed, it could be subjected to judicial review by bill in equity. "Equity jurisdiction may be invoked when it is

---

[1] 38 Stat. 208, 28 U. S. C. 41.

essential to the protection of the rights asserted, even though the complainant seeks to enjoin the bringing of criminal actions."

Considering the circumstances here alleged, the great and obvious damage which might be suffered, the importance of the rights asserted, and the lack of any other remedy, we think complainants could properly ask relief in equity. The jurisdiction of a District Court is to be "determined by the allegations of the bill, and usually if the bill or declaration makes a claim that if well founded is within the jurisdiction of the Court it is within that jurisdiction whether well founded or not." *Hart* v. *B. F. Keith Vaudeville Exchange,* 262 U. S. 271, 273; also *Binderup* v. *Pathe Exchange,* 263 U. S. 291, 305; *United States* v. *Archibald McNeil & Sons,* 267 U. S. 302, 307.

By admission, Congress could have authorized the Commission to disclose the details of reports concerning costs, etc. But petitioners insist that the Bituminous Coal Act conferred no such power; on the contrary definitely denies it.

The Act contains twenty-one sections and a schedule of districts. Section 4—"The provisions of this section shall be promulgated by the Commission as the 'Bituminous Coal Code', and are herein referred to as the code." "Part II—Marketing" of this declares—

"The Commission shall have power to prescribe for code members minimum and maximum prices, and marketing rules and regulations, as follows:

"(a) All code members shall report all spot orders to such statistical bureau hereinafter provided for as may be-designated by the Commission and shall file with it copies of all contracts for the sale of coal, copies of all invoices, copies of all credit memoranda, and such other information concerning the preparation, cost, sale, and distribution of coal as the Commission may authorize or require. All such records shall be held by the statistical

bureau as the confidential records of the code member filing such information.

"For each district there shall be established by the Commission a statistical bureau which shall be operated and maintained as an agency of the Commission. . . ."

Section 10 (a)—

"The Commission may require reports from producers and may use such other sources of information available as it deems advisable, and may require producers to maintain a uniform system of accounting of costs, wages, operations, sales, profits, losses, and such other matters as may be required in the administration of this Act. No information obtained from a producer disclosing costs of production or sales realization shall be made public without the consent of the producer from whom the same shall have been obtained, except where such disclosure is made in evidence in any hearing before the Commission or any court and except that such information may be compiled in composite form in such manner as shall not be injurious to the interests of any producer and, as so compiled, may be published by the Commission."

Counsel submit an ingenious argument to show that as petitioners are code members their returns to Order 15 are not within the ambit of § 10 and must be treated as if presented under § 4, Part II (a) and therefore confidential. Also, that the challenged action of the Board conflicts with the words, spirit and general purposes of the enactment.

We have examined the argument but cannot conclude that the reasons advanced are adequate to support the point taken.

The language of § 10 (a) applies to all producers and we think allows what the Board proposes. It harmonizes rather than conflicts with the general purposes of the statute to permit action by the Board only upon full information. Obviously publication may be harmful to

petitioners but as Congress had adequate power to authorize it and has used language adequate thereto we can find here no sufficient basis for an injunction.

Upon the ground and for the reasons herein stated the decree of the District Court is

*Affirmed.*

MR. JUSTICE BLACK, concurring.

I concur in the affirmance of the decree of the District Court. For reasons stated in the opinion of the Circuit Court of Appeals,[1] I believe that Court properly found the District Court without jurisdiction.