**B. C. MORTON INTERNATIONAL CORPORATION, Plaintiff, Appellant,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant, Appellee.**

**No. 5959.**

United States Court of Appeals
First Circuit.

July 3, 1962.

---

Robert L. Meade, Boston, Mass., with whom Hale & Dorr, Boston, Mass., was on brief, for appellant.

Charles F. Choate, Boston, Mass., with whom Robert Proctor and Choate, Hall & Stewart, Boston, Mass., were on brief, for appellee.

Before HARTIGAN and ALDRICH, Circuit Judges, and GIGNOUX, District Judge.

GIGNOUX, District Judge.

B. C. Morton International Corporation appeals from a judgment dismissing its amended complaint, which seeks a declaratory judgment and injunctive relief against the Federal Deposit Insurance Corporation, and from an order denying plaintiff leave to further amend its complaint. The appeal presents the question of whether declaratory and injunctive relief is available against a corporate agency of the United States Government to relieve a plaintiff which has been caused substantial injury by the issuance by the agency of a press release deliberately misrepresenting the application of federal law for the specific purpose of destroying plaintiff's business. Our answer is in the affirmative.

It appears from the amended complaint that appellant is a Massachusetts corporation, with its principal place of business in Boston, and has been engaged in the investment business on a nationwide basis for many years. Appellee is a corporation organized under the Federal Deposit Insurance Act, 12 U.S.C.A. § 1811 et seq., for the purpose of insuring bank deposits. Appellant has for some years been engaged in the business of purchasing and selling certificates of deposit issued by "insured banks" as defined in 12 U.S.C.A. § 1813(h). A typical

transaction material to the present proceeding takes place in the following manner: Many insured banks require prospective borrowers to maintain on deposit a "compensating balance" representing a specified percentage of the loan. At a borrower's request, appellant deposits in the insured bank an amount equal to the required compensating balance, and the bank issues to appellant a certificate of deposit, maturing in one year or less, upon the same terms and in the same manner as it issues other certificates of deposit. The borrower pays appellant a commission or fee for this service. After acquiring certificates of deposit in this manner, appellant sells or offers to sell them to investors at their discounted value under prevailing interest rates. The sales are made to investors on the basis that the obligations represented by the certificates are insured deposits. Appellant, along with many other companies, has engaged in such transactions to the extent of millions of dollars annually for a number of years.

Sometime in November, 1960, appellee issued a press release to the effect that certificates of deposit issued in the manner above described would not be regarded as qualifying for insurance under the Act. The amended complaint alleges that appellee "did not purport to construe the Act as written, but deliberately and intentionally attempted to add to the Act legal restrictions not justified by any reasonable and proper interpretation thereof," and that such action by appellee was "for the specific purpose of interfering with and destroying the business of the plaintiff." The amended complaint further alleges that as a result of wide circulation of the release in financial publications, "the demand of investors for the purchase of certificates of deposit from the plaintiff has been drastically reduced and the plaintiff's business has been seriously impaired, preventing the plaintiff from exercising its right to carry on a lawful business activity." Furthermore, it is alleged that appellant has been threatened with injunctive and other proceedings under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq., if it should sell or offer to sell any such certificates of deposit without representing that they are not insured.[1] Since appellant deals in other securities, it is alleged that any injunctive or other proceeding of this kind would cause irreparable injury to it.

Finally, the amended complaint alleges that the matter in controversy exceeds, exclusive of interest and costs, the sum of $10,000. It seeks a declaration that certificates of deposit issued pursuant to such transactions represent "insured deposits" within the meaning of the Federal Deposit Insurance Act (12 U.S.C.A. § 1813(l) and (m)) and asks for an injunction permanently restraining appellee from representing otherwise.

■ The District Court correctly noted its jurisdiction over the action based upon the combined effect of 12 U.S.C.A. § 1819, which says that the Federal Deposit Insurance Corporation shall have the power "To sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States * * *"; and 28 U.S.C. § 1331(a), which says that "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the * * * laws * * * of the United States." Federal Deposit Ins. Corp. v. George-Howard, 153 F.2d 591, 593 (8th Cir., 1946).[2] It dismissed the action,

1. The amended complaint does not reveal by whom such proceedings were threatened, but counsel for appellant indicated in argument before this Court, and apparently in argument before the trial court, that it was the Securities and Exchange Commission.

2. It is well settled that the authority to sue and be sued contained in the charter of a government corporation includes suits

however, on the grounds that the amended complaint, as asserted in defendant's motion to dismiss: (1) "fails to state a claim against the defendant upon which relief can be granted," Fed.R.Civ.P. 12 (b) (6), 28 U.S.C., and (2) "fails to show the existence of an actual controversy between the parties of the nature required by Article III of the United States Constitution and Section 2201 of the Judicial Code, Title 28." (The Federal Declaratory Judgment Act). We conclude that the District Court was in error in each of these holdings.[3]

As to the first holding, the District Court's conclusion that the amended complaint failed to state a cause of action against the defendant was based upon a ruling of law "that, as a federal agency, defendant has an absolute privilege under (the) federal law of torts to make a statement within the scope of its official function even if it damages, or disparages, or interferes with advantageous business relations of another. Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L. Ed.2d 1454 (1959); Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959)."[4] The two Supreme Court cases upon which the trial court relied in support of this ruling held only that individual officers of the United States Government, who issued public statements in the discharge of their official duties, were protected by an absolute privilege from personal liability in actions for money damages. In holding that the individual defendants in those cases were immune from civil damage suits, the Supreme Court stated the reasons for the recognition of the privilege to be that "officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous and effective administration of policies of government." Barr v. Matteo, supra, 360 U.S. at 571, 79 S.Ct. at 1339; see Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand, C.J.), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

We do not think the principle announced in Barr v. Matteo, supra, and Howard v. Lyons, supra, can properly be extended to bar the present action. The protection of public officials from the fear of civil damage suits is not a concern in

in tort. Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 395–397, 59 S.Ct. 516, 83 L.Ed. 784 (1939); Sloan Shipyards Corp. v. U. S. Fleet Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762 (1922); Prato v. Home Owners' Loan Corp., 106 F.2d 128 (1st Cir., 1939).

The exclusive remedy provision of the Federal Tort Claims Act (28 U.S.C. § 2679(a)) does not bar this action since it is not an action for money damages cognizable under 28 U.S.C. § 1346(b). See the text of 28 U.S.C. §§ 2679(a) and 1346(b); 2 Harper & James, Torts § 29.12 (1956).

3. After the trial court entered its judgment dismissing the action, plaintiff filed a motion to further amend the complaint by adding the contents of the press release allegedly issued by defendant, as reported in the Wall Street Journal, which specifically mentioned the plaintiff as "one major practitioner of the technique." The trial court denied plaintiff leave so to further amend its complaint on the ground that the proposed amendment in no way met the objections upon which the court based its dismissal of the amended complaint, and because the proposed amendment was both untimely and an impermissible attempt to plead evidence. In view of our conclusion that the District Court erred in dismissing the complaint without this amendment, it is not necessary for us to consider appellant's appeal from the denial of this motion.

4. The court below correctly concluded that federal law governed in determining the validity of appellee's claim of absolute privilege. Howard v. Lyons, supra, 360 U.S. 597, 79 S.Ct. 1333; Barr v. Matteo, supra. For present purposes we also accept the treatment of this action, by the parties and the trial court, as falling "within the general principles applying to disparagement included within the general term of public libel." See 3 Restatement, Torts, ch. 28; cf. Prosser, Torts § 107 (2d ed. 1955).

an action for declaratory and injunctive relief; and the Supreme Court has so held. In Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951), which seems to control the case at bar, it was alleged that the Attorney General of the United States, purporting to act under an Executive Order, had defamed the petitioning organizations by designating them as Communist in a list furnished to the Loyalty Review Board for use in connection with determinations of disloyalty of government employees. The Board's dissemination of the list to all departments and agencies of the federal government by publication in the Federal Register resulted in nationwide publicity. Petitioners alleged that the designation was contrary to fact and that it was made in a patently arbitrary manner. The complaints sought declaratory and injunctive relief against the Attorney General. The Supreme Court upheld the complaints against motions to dismiss. What was then the leading case on the question of privilege of public officials, Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896) was distinguished on the basis that:

> "These complaints do not raise the question of the personal liability of public officials for money damages caused by their ultra vires acts. See Spalding v. Vilas, 161 U.S. 483 [16 S.Ct. 631, 40 L.Ed. 780]. They ask only for declaratory and injunctive relief striking the names of the designated organizations from the Attorney General's published list and, as far as practicable, correcting the public records.

5. The Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202) provides as follows:
  "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought.
  * * * *"

> "The respondents are not immune from such a proceeding. Only recently, this Court recognized that 'the action of an officer of the sovereign (be it holding, taking or otherwise legally affecting the plaintiff's property) can be regarded as so 'illegal' as to permit a suit for specific relief against the officer as an individual * * * if it is not within the officer's statutory powers or, if within those powers * * * if the powers, or their exercise in the particular case, are constitutionally void.' Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 701–702 [69 S.Ct. 1457, 93 L.Ed. 1628]. The same is true here, where the acts complained of are beyond the officer's authority under the Executive Order." 341 U.S. at 139–140, 71 S.Ct. at 632.

Consistent with the position taken by the Supreme Court in Joint Anti-Fascist Committee, supra, we see no basis, in reason or authority, for extending the immunity against civil damage suits afforded to individual public officials by the Barr and Howard cases to actions for declaratory and injunctive relief against a government agency. Therefore, we hold that appellee is not so privileged in this action.

The trial court's second ruling was premised upon an apparent misunderstanding of the position of plaintiff's counsel. In holding that the complaint failed to disclose any "case or controversy" in the sense of Article III of the Constitution or of the Declaratory Judgment Act,[5] the court stated:

> "With artfulness plaintiff has not set forth in the pleading the text of

"The statutory provision limiting declaratory judgment to 'cases of actual controversy' is no more than a recognition that the federal judicial power extends only to 'cases' or 'controversies' in the constitutional sense." Indemnity Ins. Co. of North America v. Kellas, 173 F.2d 120, 123 (1st Cir. 1949). See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239–240, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

defendant's alleged statement. But from the colloquy at the bar, it appeared that defendant did not address any statement to plaintiff, or to a particular prospective customer of plaintiff, or with express reference to plaintiff as distinguished from innumerable others in like lines of activity. And, despite the allegation in paragraph 9 of the amended complaint referring to defendant's 'specific purpose of interfering with and destroying the business of the plaintiff', it was virtually conceded that if defendant sought any destruction whatsoever, the object sought was to eliminate a common kind of dealing by many persons, and not to single out the plaintiff as a special target."

The court then went on to rule that:

" * * * to render judicial opinions on press releases would be an intolerably burdensome and generally futile exercise of an advisory opinion jurisdiction. Where it is not alleged either that the statement has plaintiff as its particular, specialized target, or that the author of the press release plans action against plaintiff, the matter is certainly not ripe for consideration as a 'case or controversy' in the Constitutional and statutory sense."

The record here wholly fails to disclose any concession by plaintiff's counsel that the object of defendant's press release was to eliminate a common type of dealing by many persons, rather than to single out plaintiff as a special target. To the contrary, the transcript of the hearing before the trial court on defendant's motion to dismiss shows just the opposite:

"Mr. Burstein: I would first like to add a couple of factual statements set forth in the complaint to which Mr. Choate has referred. The complaint specifically alleges that this particular release was specifically directed at the plaintiff and was not intended primarily to be a general statement but was particularly intended to interfere with the plaintiff carrying on this business.

"The Court: You mean that even though on its face it does not refer to the plaintiff, the proof will show that the plaintiff is the object.

"Mr. Burstein: Exactly. And that the purpose of this release was to stop this business. * * * "

As we read this colloquy, it is completely consistent with the specific allegation of the amended complaint that in issuing the challenged release, defendant "deliberately and intentionally" misconstrued the Act "for the specific purpose of interfering with and destroying the business of the plaintiff."

On the record before us, we are not faced with the question of whether an erroneous press release, addressed to the world at large by a governmental agency, in the good faith exercise of its official functions, about a generalized type of activity, in itself gives rise to an "actual controversy" entitling a plaintiff to declaratory and injunctive relief; and we express no view on this question. Cf., e. g., Kukatush Mining Corp. v. Securities and Exchange Comm., 198 F.Supp. 508 (D.C.D.C.1961); Hoxsey Cancer Clinic v. Folsom, 155 F.Supp. 376 (D.C. D.C.1957); and Babbitt Auto Parts Co. v. Fleming, 51 F.Supp. 360 (D.C.D.C. 1941). Finding no concession such as that upon which the trial court relied, and accepting the allegations of the amended complaint as true, as we must on a motion to dismiss, we are presented with a release which had appellant as its particular, specialized target and was deliberately issued for the purpose of destroying appellant's business.

The question of "actual controversy" in this case is governed by the positions taken by the five Justices who constituted the majority of the Supreme Court, which sustained the complaints for declaratory and injunctive relief in Joint Anti-Fascist Committee, which has been fully stated supra. In that case it was alleged that the Attorney General of the

United States had defamed and caused substantial injury to the petitioning organizations by falsely and arbitrarily designating them as Communist in a list furnished to the Loyalty Review Board, which was published in the Federal Register and received nationwide publicity. Mr. Justice Burton dealt with the "actual controversy" question as follows:

"* * * The touchstone to justiciability is injury to a legally protected right and the right of a bona fide charitable organization to carry on its work, free from defamatory statements of the kind discussed, is such a right.

"It is unrealistic to contend that because the respondents gave no orders directly to the petitioners to change their course of conduct, relief cannot be granted against what the respondents actually did. We long have granted relief to parties whose legal rights have been violated by unlawful public action, although such action made no direct demands upon them. Columbia Broadcasting System v. United States, 316 U.S. 407 [62 S.Ct. 1194, 86 L.Ed. 1563]; Pierce v. Society of Sisters, 268 U. S. 510 [45 S.Ct. 571, 69 L.Ed. 1070]; Buchanan v. Warley, 245 U.S. 60 [38 S.Ct. 16, 62 L.Ed. 149]; Truax v. Raich, 239 U.S. 33 [36 S.Ct. 7, 60 L.Ed. 131]. The complaints here amply allege past and impending serious damages caused by the actions of which the petitioners complain." 341 U.S. at 140–141, 71 S. Ct. at 632.

Mr. Justice Black, concurring, took substantially the same position: "* * * petitioners have standing to sue for the reason among others that they have a right to conduct their admittedly legitimate political, charitable and business operations free from unjustified governmental defamation. Otherwise, executive officers could act lawlessly with impunity." 341 U.S. at 143, 71 S.Ct. at

633. Mr. Justice Frankfurter, in a lengthy concurring opinion, concluded: "On the balance of all considerations, the exercise here of judicial power accords with traditional canons for access to courts without inroads on the effective conduct of government." 341 U.S. at 160, 71 S.Ct. at 642. Mr. Justice Douglas, also concurring, said: "An organization branded as 'subversive' by the Attorney General is maimed and crippled. The injury is real, immediate, and incalculable." 341 U.S. at 175, 71 S.Ct. at 650. Mr. Justice Jackson agreed that the designation was more than a mere press release without legal consequences (thus rejecting the view held by the three dissenting Justices) because of its effect upon the substantive legal right to future government employment of the members of the petitioning organizations. 341 U.S. at 183–185, 71 S.Ct. at 654..

■ Here, as in Joint Anti-Fascist Committee, appellant has amply alleged past and impending serious damage caused by the publication of appellee's allegedly false statement. By its motion to dismiss appellee admits the uncontroverted allegations of the amended complaint that the officers of the agency knowingly acted in excess of their authority for the specific purpose of destroying appellant's business and that as a result appellant has been and will be prevented from exercising its right to carry on a lawful business activity. The Joint Anti-Fascist Committee case shows that in determining the right of a plaintiff to relief against arbitrary governmental action, "the true test is the substantiality of the present or imminent harm which the administrative action inflicts on the plaintiff." 3 Davis, Administrative Law § 21.07 at pp. 176–177 (1958). Cf. Utah Fuel Co. v. Nat. Bituminous Coal Co., 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483 (1939). In our view the allegations of the amended complaint are sufficient to meet that test.[6]

6. In Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959),

a case similar to Joint Anti-Fascist Committee, respondents conceded petitioner's

Appellee contends that appellant fails to state an "actual controversy" because it does not allege a specific transaction and seeks only a declaration of rights of a "hypothetical investor holding a hypothetical certificate of deposit issued under hypothetical circumstances on rights maturing only *if* a bank insured by the defendant becomes insolvent * * *. cf. Eccles v. Peoples Bank, 333 U.S. 426 [68 S.Ct. 641, 92 L.Ed. 784], rehearing denied, 333 U.S. 877 [68 S.Ct. 900, 92 L.Ed. 1153] (1948)." We cannot agree. On the face of the amended complaint, we can find nothing hypothetical about the allegation that appellee issued a release, which deliberately misrepresented the application of federal law to the transactions described in the complaint. Nor can we find anything hypothetical about the allegations that this release was issued for the specific purpose of injuring appellant's business and that in fact appellant's business has been substantially damaged thereby. There is no merit in the contention that a private business has no protection against attack by a government agency as long as the agency uses artful generality.

 Finally, as to the trial court's suggestion that the federal courts might decline to grant relief in this case "on grounds of the limits of federal *equity* jurisprudence," we are unable to see any sound reason why, upon the facts alleged in the amended complaint, a federal court should refuse to exercise jurisdiction. Nor can we accept appellee's argument that the amended complaint was properly dismissed because the prayer for relief is too broad. We have no doubt of the ability of the District Court at the prop-

er time to fashion an appropriately limited decree if appellant can prove its allegations.

It seems hardly necessary to state that nothing we have said purports to adjudicate the truth of appellant's allegations.

A judgment will be entered vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent herewith.

standing to sue. Chief Justice Warren noted the court's agreement with this concession as follows:

"We note our agreement with respondents' concession that petitioner has standing to bring this suit and to assert whatever rights he may have. Respondents' actions, directed at petitioner as an individual, caused substantial injuries, Joint Anti-Fascist Committee v. McGrath, 341 U.S. 123, 152, [71 S.Ct. 624, 95 L.Ed. 817] (concurring opinion), and, were they the subject of a suit between private persons, they could be attacked as an invasion of a legally protected right to be free from arbitrary interference with private contractual relationships. Moreover, petitioner has the right to be free from unauthorized actions of government officials which substantially impair his property interests. Cf. Philadelphia Co. v. Stimson, 223 U.S. 605 [32 S.Ct. 340, 56 L.Ed. 570]." 360 U.S. at 493 fn. 22, 79 S.Ct. at 1412.