**AMERICAN SUMATRA TOBACCO COR-PORATION v. SECURITIES AND EXCHANGE COMMISSION, and three other cases.**

Nos. 6776, 6794, 6815, 6878.

United States Court of Appeals for the District of Columbia.

Argued June 11, 1937.

Decided Sept. 30, 1937.

Hugh H. Obear, of Washington, D. C., for American Sumatra Tobacco Corp.

Frank J. Morley and Richard T. Angell, both of Minneapolis, Minn., for General Mills, Inc.

William S. Culbertson, of Washington, D. C., and John C. Bruton, Jr., of New York City, for International Nickel Co. of Canada, Ltd.

Phil D. Morelock, of Washington, D. C., for Bulova Watch Co., Inc.

Robert E. Kline, Jr., Francis S. Walker, and Thomas J. Lynch, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

The three corporations involved in this case[1] filed with the Securities and Exchange Commission, at various dates in April and May, 1935, applications for the registration of certain of their securities on registered stock exchanges. Subsequently, and from time to time, various amended application forms were filed. Each corporation, pursuant to section 24(b) of the Act,[2] duly filed written objections to the public disclosure of certain of the information required to be filed. In the case of American Sumatra Tobacco Corporation objection was made to the disclosure of information concerning its gross sales, cost of goods sold, and inventory position. In the case of International Nickel Company of Canada, Ltd., objection was made to the disclosure of information concerning remuneration to officers and employees, profit and loss statement, and certain portions of its expenses for maintenance and repairs, depreciation, taxes, rents, and royalties. In the case of Bulova Watch Co., Inc., objection was made to the disclosure of information concerning gross sales, "mark-up," and cost of goods sold. In each of the cases the Commission granted the requests of the applicants for a hearing, and on various dates hearings were had, evidence taken, and arguments heard. In each instance the Commission, after the hearing, found that disclosure of the information involved was in the public interest and accordingly entered an order denying each application for confidential treatment. These determinations by the Commission were variously made on May 15, 1936 (in the case of the Tobacco Corp.), on June 26, 1936 (in the case of International Nickel), and on September 14, 1936 (in the case of Bulova Watch Co.). Each corporation, within 60 days after these respective dates, filed in this court its petition to have set aside or modified the action of the Commission in refusing to accord confidential treatment to the information filed. The petitions for review were filed or purported to be filed, pursuant to section 25(a) of the Act (15 U.S.C.A. § 78y(a), and in general the grounds urged by the petitioners are that Congress is without power to legislate on the subjects contained in the Act; that compulsory disclosure of information would constitute unreasonable search and seizure; that the disclosure of the information involved here would amount to the revelation of trade secrets in contravention of section 24(a) of the Act (15 U.S.C.A. § 78x(a); that disclosure of the information is not in the public interest, as section 24(b) of the Act (15 U.S.C.A. § 78y(b) requires; that the orders directing disclosure or denying secrecy were arbitrary, capricious, and without warrant of law; and that the orders were entered upon no evidence, or upon insubstantial evidence or were contrary to the evidence.

All the petitioners allege that the disclosure of the particular information in question will result in serious injury to them. Transcripts of the records before the Commission were not filed, and petitioners accordingly, in March, 1937, moved for an order, pursuant to rule 33 of this court, to require the Commission to file such transcripts of the proceedings before it. Thereupon the Commission filed a motion to dismiss the several petitions on the ground that "The actions of the respondent [Commission] complained of in the petitions herein do not constitute reviewable orders within the meaning of Section 25 of the Securities Exchange Act of 1934 (15 U.S. C., § 78y [15 U.S.C.A. § 78y], conferring jurisdiction on this Court to review orders of the respondent, this Court has no jurisdiction to entertain such petitions or to grant the relief prayed for, and, therefore, the respondent ought not to be required to file, and this Court has no power to require

---

[1] General Mills, Inc., was a petitioner but the case as to it has been dismissed without prejudice.

[2] (Securities Exchange Act of 1934, 48 Stat. 881, Title 15 U.S.C. § 78a et seq. [15 U.S.C.A. § 78a et seq.]).

it to file, any transcripts of records and the petitions herein should be dismissed for lack of jurisdiction to entertain them."

Upon the filing of answers to this motion the court set the cases down for argument on the single issue tendered, whether or not the orders involved are reviewable under section 25(a) of the Act (15 U.S.C.A. § 78y (a). This question alone is now before us for decision.

Section 12(b) of the Act (15 U.S.C.A. § 78*l*) requires a corporation applying for registration to file with the exchange and with the Commission certain information concerning its financial structure, its securities, its officers, etc. This information, or parts of it, is that as to which petitioners in this case sought confidential treatment. Section 24(a), 15 U.S.C.A. § 78x(a), protects from disclosure any trade secrets or processes contained in any report filed with the Commission. Section 24(b), 15 U.S.C.A. § 78x(b) is as follows: "Any person filing any such application, report, or document may make written objection to the public disclosure of information contained therein, stating the grounds for such objection, and the Commission is authorized to hear objections in any such case where it deems it advisable. The Commission may, in such cases, make available to the public the information contained in any such application, report, or document only when in its judgment a disclosure of such information is in the public interest."

Section 25(a), 15 U.S.C.A. § 78y(a) is as follows: "Any person aggrieved by an order issued by the Commission in a proceeding under this title [chapter] to which such person is a party may obtain a review of such order in the Circuit Court of Appeals of the United States, within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals of [for] the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part."

The section authorizes the court "to affirm, modify, and enforce or set aside such order, in whole or in part."

Pursuant to specific authorization the Commission in August, 1934, adopted and promulgated rules and regulations. Rule UB2 (as amended May 15, 1935) deals with the subject of the disclosure or non-disclosure of information filed with the Commission. It regulates the manner in which the attention of the Commission shall be drawn to an application for confidential treatment. It provides that upon an adverse holding by the Commission and notification to the registrant the information shall after the lapse of 15 days be made public unless within that time the registrant shall file a written statement that he intends in good faith to seek judicial review of the finding and determination. The Commission does not dispute the fact that the petitioners have complied with the rule in all respects, nor does it dispute the fact that petitioners are "persons aggrieved" by an "order" issued by the Commission or that the Commission's determination was entered in "a proceeding" under the Act to which petitioners were "parties." The only question is whether the order asked to be reviewed is the sort of order contemplated and provided for in section 25 (a) of the Act.

The position which the Commission takes is that a reviewable order within the contemplation of section 25(a) is one entered only after notice and opportunity for hearing, and upon a finding of facts. And the Commission therefore contends that, since section 24(b) does not require that it exercise its judgment only after hearing or that it proceed by order, but may in its discretion make any determination it deems advisable, with or without a hearing, its exercise of power and discretion under section 24(b) is not reviewable under section 25(a). In other words, that section 25 contemplates that a reviewable proceeding must be one at which evidence was introduced and upon which the Commission made findings of fact and not one in which the action of the Commission is discretionary and as to which it may make any order it deems advisable with or without a hearing. It is at once obvious the Commission's position in this respect is wholly inconsistent with its rule (UB2) which clearly recognizes a right of judicial review in the circumstances alleged to exist here. But the position of the Commission is that the rule was inadvertently adopted and is an unlawful extension of the language of the statute and that by its adoption the Commission cannot confer jurisdiction upon this Court which does not exist under section 25(a) of the Act. Bearing in mind that the present hearing has no relation to the merits, as to which a wholly different situation may result, but is confined solely to the question of our

jurisdiction, we think the position of the Commission is not well taken.

Here the petitions for review allege irreparable injury through the threatened disclosure of the information contained in the applications which the petitions characterize as trade secrets, and the motion to dismiss concedes the truth of this allegation. In such case it is fundamental that the property rights of the citizen may not be put in jeopardy or destroyed in any proceeding before an administrative board without notice, hearing, and judicial review, and we think it is not correct to say that either the language of the Act or anything which appears in the reports or hearings in Congress justifies the conclusion that Congress intended by the permissive language of section 24(b) to deny the right of review. When it is remembered that Congress in express words recognized the property right in trade secrets and in information which it is not in the public interest to reveal and prohibited their disclosure, it is difficult to follow an argument based on the theory that the protection of this property right is subject to the unfettered decision of the Commission, or the still more far-reaching argument that Congress in the language used in 24(b) purposely denied the right of challenge. To sustain this reasoning would convict Congress of disingenuousness and certainly would suggest grave doubts of the constitutionality of the statute; but we think the language used when considered in the light of the whole Act is reasonably susceptible of a different construction, namely, that the discretion committed to the Commission, as to the determination of public interest and as to the question whether or not trade secrets or processes are involved, is a judicial discretion and requires the exercise of judgment. It may very well be that Congress recognized that the Commission would in many instances upon the face of the protest, or upon an inspection of the information claimed to be confidential, or upon an informal investigation, be able to reach a favorable decision without a formal or extended hearing. In such cases it would be a waste of time to require one. And so in our view the true construction of the language used is that the Commission may grant the request that information involving trade secrets or processes, or information the disclosure of which is not in the public interest, be withheld without a hearing when it deems such course advisable, but that it was not the intention of Congress

to deny a hearing where a prima facie case is made and in which the parties ask to be heard. This was the view of the statute taken by the Commission itself in the adoption of its rules and obviously is also its administrative practice, for in each of these cases there were lengthy hearings in which evidence was taken and arguments heard, and in one at last, both before an examiner and also before the Commission. It was upon consideration of the evidence that the orders of denial here were made, and this, we think, with deference to the later view of the Commission, is the proper practice. Congress has undertaken to provide within the Securities Exchange Act the machinery by which judicial orders of the Commission may be reviewed. In this regard the Act is different from, for example, the Commerce Act, 49 U.S.C.A. § 1 et seq. This fact indicates to us that Congress meant the Act itself to cover the entire field of review of the Commission's judicial action. We are not concerned here with an administrative ruling such as was made in Third Ave. Ry. Co. v. Securities and Exchange Commission (C.C.A.) 85 F. (2d) 914, but with action which operates particularly rather than generally—with a judgment entered on a state of facts and affecting only one person. Such a judgment satisfies the requirement of the Act so far as review is concerned, that there be (a) a proceeding under the Act, (b) to which the petitioner was a party, (c) and that he be aggrieved by the order of the Commission.

The present position of the Commission is sought to be sustained on the authority of cases construing section 20a, as added to Interstate Commerce Act by section 439 of the Transportation Act of 1920 (49 U.S.C.A. § 20a). The cases on which the Commission relies are the Chicago Junction Case, 264 U.S. 258, 44 S.Ct. 317, 68 L.Ed. 667, Miller v. United States (D.C.) 277 F. 95, and Pittsburgh & W. V. Ry. Co. v. I. C. C., 54 App.D.C. 34, 293 F. 1001. We have carefully examined these cases and are wholly unable to find in them anything which will sustain the rule for which the Commission contends.

In the Chicago Case the New York Central applied to the I. C. C. for permission to acquire control of certain belt lines within the Chicago switching district which had theretofore been operated independently. The B. & O. and several other railroads operating in that territory opposed the application and subsequently sued to have the

order permitting the acquisition declared void. The pertinent section of the Act (49 U.S.C.A. § 5(2) provided: "Whenever the commission is of opinion, after hearing, upon application of any carrier * * * that the acquisition * * * of the control of any other such carrier * * * will be in the public interest, the commission shall have authority by order to approve and authorize such acquisition."

Plaintiffs attacked the order on the ground that there was no evidence to support the finding that acquisition of the terminal railroad by the New York Central was "in the public interest." There was a motion to dismiss, which the Supreme Court treated as a full admission of the allegation that there was no evidence to support the order. It was the contention of the defendant that the order was one of a nature not subject to review, but as to this Justice Brandeis, who wrote the opinion of the court, said, first, that even if the order were legislative it might still be subject to review, and, second, that similarly the fact that it was permissive only would not preclude review. Continuing his statement along these lines, he appended in explanation a footnote to which the Commission calls our particular attention, and upon which it relies as sustaining its contention that an order entered pursuant to a statute which does not require a hearing to support it is not an order reviewable by a court. It is quite true that the justice does point out a distinction between sections of the Commerce Act which require a hearing and those which do not, but we find nothing in this language of the opinion or in the supporting case to sustain the Commission's conclusion that the present order for that reason is nonreviewable.

The case of Miller v. United States, which is cited in the footnote referred to, as illustrative of the sections of the Commerce Act which permit orders without hearings, was a suit by Miller to enjoin an order of the Commission approving the issuance of new securities by the Chicago & Eastern Illinois Railroad Company. The motion to dismiss in that case was on the grounds, first, that the petitioner showed no interest entitling him to sue; second, that no order was involved which was subject to the injunctive process of the court; third, that no cause of action against the United States was set forth. The court concluded that Miller had no standing to object to the order, and it seems clear to us that his inability to sue resulted from his lack of interest in the subject matter rather than from any inherent nonreviewability of the order.

Pittsburgh & W. V. Ry. Co. v. I. C. C. was a case in this court. The Pittsburgh Company wished to take over the West Side Belt Railroad Company and to issue certain securities. It applied to the Commission under Interstate Commerce Act, § 20a (49 U.S.C.A. § 20a), for authority to issue the securities. The Commission heard and denied the application. Thereafter the Pittsburgh Company filed a bill in the District Court (a) to restrain the Commission and the Attorney General from enforcing the penalties provided in the statute for the unauthorized issuance of securities on the theory that the statute was unconstitutional and void, and (b) to enjoin the Commission from refusing to issue the necessary authorization. The bill alleged that, there being no provision of law for review of the erroneous construction of the Act by the Commission, complainants would suffer irreparable damage. We held that the Act was constitutional and that in a proceeding in which the Interstate Commerce Commission acted within its jurisdiction the judgment of the Commission could not be reviewed or controlled by injunction. All that we meant there was that the court would not issue mandamus or injunction against the Commission to require it to exercise its discretion in a particular way, which was the relief prayed. In other words, that a suit for mandatory injunction is not the way to test the validity of the Commission's action.

Nor is there anything in the case of Baltimore & Ohio R. Co. v. Lambert Run Coal Co. (C.C.A.) 267 F. 776, which in our opinion strengthens the position of the Commission here. That was a suit begun in the state court alleging that there was a shortage of coal cars and that the railroad refused to make distribution as required by the Commerce Act (49 U.S.C.A. § 1 et seq.). The bill prayed that the railroad be restrained from this practice and be required to furnish cars in accordance with the ratings established by the I. C. C. and by the Act. Defendant removed the case to the District Court and there filed a motion to dismiss and an answer. The answer insisted that the suit was in fact one to stay an order of the Commission and objected to any consideration of the case by a single judge. On appeal Judge Woods reversed the District Court and considered the case on the merits. The case went later

to the Supreme Court (258 U.S. 377, 42 S. Ct. 349, 66 L.Ed. 671) where the opinion was written by Mr. Justice Brandeis. He held that the decree of the District Court was properly reversed but that the Circuit Court had no occasion to pass on the merits but should have dismissed the bill for want of jurisdiction and without prejudice. He pointed out two fundamental objections to the jurisdiction: One, that a suit to restrain orders of the Commission would not lie in the state court; second, the Judicial Code § 208, 28 U.S.C.A. § 46, required such a suit to be brought in the federal court and that removal to a federal court would not satisfy this requirement. If the point here insisted on had been thought valid in that case, it is reasonable to think that Justice Brandeis would have pointed out that under the Interstate Commerce Act no hearing was required before the Commission in the matter of allocation of coal cars and that the discretion of the Commission on the subject was plenary. In that view it would have made no difference where the suit was brought because, also in that view, the Commission's action was not subject to judicial scrutiny anywhere. Instead of that, he said, on other grounds, the suit should have been dismissed without prejudice. The case seems distinguishable also on the ground that here we are dealing with action of a judicial nature whereas in Baltimore & Ohio v. Lambert Run Coal Co. the action was legislative, that is to say, the Commission in that case had suspended a rule of general application. What we have said heretofore on this point is applicable here.

We do not think the decisions relating to I. C. C. orders are particularly helpful in any event, however, because of the obvious difference between the Commerce Act and the Securities Exchange Act. In the former there is no provision for review while in the latter there is. But we may point out that orders under section 20a of the Commerce Act (as added by Transportation Act 1920 § 439, 49 U.S.C.A. § 20a) are clearly not impregnable, as United States v. Chicago, etc., R. Co., 282 U.S. 311, 51 S.Ct. 159, 75 L.Ed. 359, demonstrates. And we think what was said by Mr. Justice Holmes in Interstate Commerce Comm. v. Nor. Pac. Ry., 216 U.S. 538, 30 S.Ct. 417, 54 L.Ed. 608, is applicable to the point we are discussing, that is to say, that we are dealing with an administrative order which it is charged and, for the purposes of this motion admitted, seriously affects property rights, and if the Commission's present position is right we should be approving a practice which would permit this to be done by way rather of fiat than of adjudication. In such circumstances we think it would be going very far to say that the rights of the parties may not be inquired into by the courts.

The Commission presses upon us the argument that as a practical matter orders directing disclosure are not reviewable under section 25(a), 15 U.S.C.A. § 78y(a), because in a case where the Commission, in its discretion, declined to hold a hearing, there would be no transcript to certify and no evidence to balance against findings of fact. But this practical difficulty results only from the Commission's interpretation of the pertinent sections, and that interpretation we do not adopt. Under our construction of the Act there will be a record, and sufficient evidence upon which to test the conclusion reached. That the view we take may result in administrative inconvenience is undeniable; that it may also result sometimes in trifling and unsupportable applications may be assumed; and in its desire to avoid these conditions we sympathize with the Commission's present point of view, but our sympathy ought not to carry us to the extent of approving a practice subversive of well-established rules.

The alternatives suggested by the Commission, that petitioners may seek relief outside the Act by a suit in equity for injunction against disclosure or may seek relief within the Act by withdrawing the information in question, would result in equal inconvenience and would constitute circuitous routes for the determination of issues easily and directly determinable by review in this court. Moreover the contention is, we think, untenable, for it can be supported only if we adopt the Commission's interpretation of section 25(a). If we have accurately construed that section, it follows that Congress has provided within the Act the exclusive remedy for persons aggrieved by the operations of the Act. Sykes v. Jenny Wren Co., 64 App.D.C. 379, 78 F.(2d) 729, sufficiently covers this point.

Motion denied.