STANDARD FRUIT AND STEAMSHIP COMPANY, a corporation, and James L. Toca

v.

MIDWEST STOCK EXCHANGE, an unincorporated association.

No. 59 C 1725.

United States District Court
N. D. Illinois.
Nov. 19, 1959.

670

John L. Bordes, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for plaintiffs.

Robert S. Cushman, MacLeish, Spray, Price & Underwood, Chicago, Ill., for defendant.

John J. Enright, Securities and Exchange Commission, Chicago, Ill., amicus curiae.

HOFFMAN, District Judge.

The plaintiffs, Standard Fruit and Steamship Company, a Delaware corporation with its principal place of business in New Orleans, Louisiana, and James L. Toca, a citizen of New Orleans, have sued to enjoin the defendant, Midwest Stock Exchange, from trading on the Exchange the common and preferred shares of Standard Stock. Pending trial on the merits, the complaint prays for the issuance of a preliminary injunction. To preserve the status quo while the issues raised by the request for preliminary injunctive relief are heard and decided, a temporary restraining order was entered on October 30, 1959, and continued by consent of the parties to November 5, 1959. A hearing on the motion for the preliminary injunction was held on November 5, 1959, and the parties have submitted full and comprehensive briefs.

*The Substantiality of Plaintiffs' Claim*

It appears that the defendant, a national securities exchange, proposed to begin trading in Standard's shares on Monday, November 2, 1959, on an unlisted basis, that is, without the filing of the registration statement and periodic reports ordinarily required by the Securities Exchange Act, 15 U.S.C.A. § 78a et seq. (1934, as amended), for the registration of securities for trading on an exchange as defined by that Act. An informal protest to this proposed trading was presented on behalf of the issuer of the stock both to the defendant and to the Securities and Exchange Commission. When these protests proved unavailing, the present action was commenced.

The complaint seeks to enjoin the projected trading in Standard shares upon the ground that such trading would violate the prohibition of Section 12(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78*l*, against trading in unlisted shares, and would cause irreparable injury to the plaintiffs by disrupting and destroying the established over-the-counter market in these securities. The defendant claims that the proposed trading is in all respects duly authorized, that no injury would result to the plaintiff corporation, its stockholders, or the investing public from the opening of this trading market, and that the appropriate forum for the plaintiffs' claims is the Securities and Exchange Commission. The Commission, as *amicus curiae*, has filed its brief, generally supporting the position taken by the defendant upon the questions of law presented.

Section 12(a) of the Securities Exchange Act of 1934 provides:

"12(a) It shall be unlawful for any member, broker, or dealer to effect any transaction in any security (other than an exempted security) on a national securities exchange unless a registration is effective as to such security for such exchange in accordance with the provisions of this title and the rules and regulations thereunder."

Section 12(f) of the Act makes three exceptions to this general prohibition:

"12(f) Notwithstanding the foregoing provisions of this section, any

national securities exchange, upon application to and approval of such application by the Commission and subject to the terms and conditions hereinafter set forth, (1) may continue unlisted trading privileges to which a security had been admitted on such exchange prior to March 1, 1934; or (2) may extend unlisted trading privileges to any security duly listed and registered on any other national securities exchange, but such unlisted trading privileges shall continue in effect only so long as such security shall remain listed and registered on any other national securities exchange; or (3) may extend unlisted trading privileges to any security in respect of which there is available from a registration statement and periodic reports or other data filed pursuant to rules or regulations prescribed by the Commission under this title or the Securities Act of 1933, as amended, information substantially equivalent to that available pursuant to rules or regulations of the Commission in respect of a security duly listed and registered on a national securities exchange, but such unlisted trading privileges shall continue in effect only so long as such a registration statement remains effective and such periodic reports or other data continue to be so filed. * * *"

The defendant's right to conduct trading in the plaintiffs' stock depends upon the interpretation of exception numbered (1) of this Section. It is undisputed that Standard's shares were traded on an unlisted basis on the New Orleans Stock Exchange prior to March 1, 1934, and that under this Section this trading privilege was continued with Standard's consent. On October 30, 1959, the New Orleans Stock Exchange ceased operations and has since dissolved. The defendant here claims the right to succeed to the trading privilege previously enjoyed by the New Orleans Stock Exchange, and relies in this position upon Rule X–12F–6, which provides:

"Rule X–12F–6. Continuance of Unlisted Trading Privileges on Merged Exchanges.

"(a) Subject to Section 12(f), as amended, and the rules and regulations thereunder, a national securities . exchange which has absorbed another exchange may, without further order of the Commission, continue unlisted trading privileges (1) in any security which was admitted to such privileges on the absorbed exchange pursuant to Clause (1) of Section 12(f), and (2) in any security which was admitted to such privileges on the absorbed exchange pursuant to Clause (2) or (3) of Section 12(f) if the vicinity of the surviving exchange includes the vicinity of the absorbed exchange."

The plaintiffs argue that the Rule does not justify the defendant's actions here, since the transaction between the defendant Exchange and the New Orleans Stock Exchange, it is contended, does not constitute an "absorption" within the meaning of the Rule. Alternatively, plaintiffs argue that if the Rule is interpreted to apply to this transaction, it is to that extent invalid as beyond the rule-making power conferred upon the Commission by Section 23(a) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78w (a), to make such rules "as may be necessary for the execution of the functions vested in" the Commission by the Act.

Upon the protest of the plaintiffs here, the Commission informally advised that it regarded the transaction in issue as an "absorption" within the meaning of its Rule. The same interpretation is adopted by the Commission in its brief as *amicus curiae*. Since the Commission promulgated the Rule and has power to alter or amend it, the question of interpretation may be left largely to that body, in accordance with the wise principle of judicial administration that leads courts to defer to the judgment of the administrative authority on the meaning of regulations and rules made by that authority. Bowles v. Seminole Rock Co.,

1945, 325 U.S. 410, 65 S.Ct. 1215, 89 L. Ed. 1700.

■ Turning then to the plaintiffs' alternative position, that the rule so construed exceeds the statutory authority, the argument may be more persuasive. Section 12(f) of the Securities Exchange Act does not provide generally for the transfer of unlisted trading privileges from one exchange to another. Under the provisions of exception numbered (2) in that Section, a security duly listed on one exchange may be traded on another without listing only upon application to the Commission and full notice and hearing. No provision at all is made in the statute itself for the transfer of the privilege of trading unlisted securities which is continued under exception numbered (1) because such trading was carried on before March 1, 1934, the effective date of the Act. For aught that appears, Congress intended this privilege of continuance to be "personal" to the exchange where trading was already established, in recognition of the claims of fairness and to preserve an orderly market.

The plaintiffs are apparently willing to concede that this privilege of continued trading might properly, in consonance with the statutory purpose, survive a mere change in the form of organization of the exchange. An exchange organized as a partnership, for example, might incorporate without forfeiting the privilege of continuing this unlisted trading. A merger or consolidation of two exchanges into a single exchange, carrying on the enterprise of both previous entities, might qualify as well. But, the plaintiffs argue, the rule in issue, as applied in this case, serves no such function, since the transaction between the defendant and the New Orleans Stock Exchange in no sense constitutes a merger or consolidation. The New Orleans Stock Exchange did not become part of the defendant but was dissolved. Midwest did not acquire the assets or assume the liabilities of the New Orleans Stock Exchange. Although eight of the fourteen members of the New Orleans Stock Exchange were already members of Midwest, the remaining six did not become members of Midwest as a result of the transaction, nor were they given any special privilege to acquire membership. On the contrary, they were left to purchase memberships on the open market if they could, and were obliged to meet the same qualifications as any new applicants. Moreover, the defendant did not assume trading in all the stocks formerly traded on the New Orleans Stock Exchange, but reserved the right to choose among those securities, and in fact selected approximately half of them, of which the Standard securities here in issue were admittedly the most important. Such a transaction, argue the plaintiffs, is not a merger or consolidation; it is rather an attempt to effect a naked transfer of the privilege of trading in unlisted securities in direct contravention of Sections 12(a) and 12(f) of the Act. If Commission Rule X–12F–6(a) is construed to permit such a transfer, they submit, the rule, pro tanto, exceeds the powers conferred by Congress.

The defendant counters with the argument, supported by the Commission's brief, that the word "absorption" in the relevant rule is not to be limited to the conventional concepts of merger or consolidation evolved in general corporate law. Although the Commission's release upon promulgation of the Rule describes its purpose as the authorization of continued unlisted trading "upon the merger or consolidation of two or more exchanges", and although the caption of the Rule is "Continuance of Unlisted Trading Privileges on Merged Exchanges", it is argued that the Rule speaks only of "absorption." This means, according to the defendant and the Commission, that the successor should assume only the trading functions of the predecessor, and arrangements concerning the interchange of memberships or assets and liabilities are irrelevant to the purpose of regulating security markets. Reviewing the legislative history of Section 12(f), the defendant points out that the Act as originally en-

673

acted provided for the termination of trading in unlisted securities previously traded at the end of a specified period of approximately two years. The question was referred to the Commission for study and recommendation, however, and it is argued that the subsequent amendment to the present form of Section 12 (f), permitting indefinite continuance of such unlisted trading subject to the Commission's power to terminate, conferred a general discretion upon the Commission to authorize and control unlisted trading. The difficulty with the argument is that the statute as amended does not empower the Commission to authorize an exchange to trade in such unlisted securities unless that exchange had carried on such trading before March 1, 1934. Otherwise, the general statutory prohibition against unlisted trading applies.

It is also argued that the Congressional purpose underlying Section 12(f) is to avoid the hardship and disruption that would result from sudden termination of all trading on an exchange market. It would follow, in this view, that transfer of unlisted trading privileges would be justified upon the dissolution of the original exchange, to preserve an exchange market for the securities. Viewed in the light of the transaction in dispute, however, the rule as interpreted is not responsive to the supposed Congressional intent. The plaintiffs' evidence shows that only about 10% of the trading in Standard's shares was conducted through the medium of the New Orleans Stock Exchange; the remaining 90% of the trading was handled in over-the-counter transactions. Whether such an exchange market demands perpetuation in view of the underlying statutory policy against unlisted trading may be doubted. The defendant answers, with reason, that this is a question that should be left to the decision of the Commission. The Commission, however, has by its rule and its interpretation left the matter exclusively to the decision of the surviving exchange. Here the defendant Exchange was permitted to pick and choose among the unlisted stocks previously traded on the New Orleans Stock Exchange, and to commence trading only in those issues which Midwest found desirable in its own interests. Under the terms of the rule, no order of the Commission is to be made upon the question of which securities demand a continuing market and which do not. Here, by reason of the plaintiff's protest and not by virtue of the rule, the Commission did in fact have occasion to consider the proposed transaction before trading on the defendant's exchange was actually to begin. But it does not appear that the particular issues to be traded by the defendant were considered or approved. Rather, the Commission seems to have concluded that the arrangement constituted an "absorption" within the meaning of its rule, and was thereupon content to leave the choice of those securities in which an exchange market was to be preserved to the exclusive choice of the defendant.

The defendant's argument makes much of the claim that the issuer of securities is not empowered to decide whether its stocks will be traded on an exchange, and that Congress rejected such a power in accepting the recommendation of the Commission on the continuation of unlisted trading. It should be noted, however, that the Commission recommended with equal force that the decision whether such trading should continue should not be left to the decision of the exchange either. Thus in the Commission Report on Trading in Unlisted Securities upon Exchanges, page 10 (January 3, 1936), it is said:

"Naturally, contentions of management against the creation of an exchange market for a particular security and the contention of the exchange for creation of such a market will be subject to determination before the Commission by an appropriate procedure, but that determination should be made upon the basis of facts related to the larger public interest and not subject simply to the desire of management for an exclusive over-the-counter market or the desire of an exchange to increase business for its members by the creation of an exchange market."

If, as defendant argues, Congress by its subsequent legislation meant to effectuate this recommendation, the rule in question acquires no support, for as interpreted here it leaves the question solely to the decision of the exchange. If, as the plaintiffs' position indicates, the Commission has abdicated its responsibilities as arbiter of the matter by its adoption and interpretation of this rule, the rule as applied in this case may be subject to attack.

In addition, the defendant argues that the predecessor of present Rule X–12F–6 was before the Congress in 1936 when present Section 12(f) of the Act was passed. It is claimed that in enacting the legislation, Congress thereby impliedly sanctioned the rule. It does not appear, however, that the rule at that time had been applied as in this case. As the plaintiffs concede, in a more limited interpretation the rule would comport with Congressional policy. In the absence of a showing that the interpretation of the rule was before the legislature, the significance of the action of Congress remains undisclosed.

Upon review of these conflicting arguments, it appears that the plaintiffs' claim is not so lacking in merit or so insubstantial as to warrant denial of a preliminary injunction upon that ground. See Riverbank Laboratories v. Hardwood Products Corp., 7 Cir., 1956, 236 F.2d 255; Bowles v. Montgomery Ward & Co., 7 Cir., 1944, 143 F.2d 38. These observations, of course, are of a preliminary nature, necessary to the disposition of the motion for a preliminary injunction, and are not in any sense determinations of the validity of the claim. Final decision must await a full trial on the merits.

*The Administrative System of Regulation*

■ The defendant argues that the comprehensive scheme of regulation in the marketing of securities established by Congress confers upon the Commission alone the responsibility for protecting the public interest. Since the prohibition against trading in unlisted securities is imposed to protect the public,

the argument runs, the plaintiffs have no standing to insist upon compliance or to seek to prevent a violation of the statute. It has been held, however, that stockholders are among the class of persons whom the statute is designed to protect, and that in consequence they may base a private suit upon violation of its provisions. Baird v. Franklin, 2 Cir., 1944, 141 F.2d 238, certiorari denied 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591. Moreover, under the Act the issuer of a security is specifically enumerated as one of those who may initiate proceedings to terminate trading in his unlisted security, and who is entitled to notice if the proceeding is commenced by others. Section 12(f), Securities Exchange Act of 1934, 15 U.S.C.A. § 78*l*. It appears, therefore, that the plaintiffs have standing sufficient to complain of the allegedly unauthorized trading. Since the action does not purport to be a representative suit under Federal Rule Civ.Proc. rule 23, 28 U.S.C.A., no question of the adequate representation of a class is presented.

■ A corollary is the defendant's argument that the Commission "in its discretion" may seek an injunction to prevent unlisted trading under Section 21 (e) of the Act, 15 U.S.C.A. § 78u (1934), and that the plaintiffs either are precluded by the Commission's decision not to proceed under this power, or that the plaintiffs' remedy lies in review of this decision in a Court of Appeals under Section 25, 15 U.S.C.A. § 78y. Such review is available, however, only for an "order issued by the Commission in a proceeding under this chapter." Accordingly, a Court of Appeals has no jurisdiction if the action of the Commission, as here, constitutes informal or advisory action and not the entry of a formal order in a statutory proceeding. Third Avenue Ry. v. S. E. C., 2 Cir., 1936, 85 F.2d 914.

■ The defendant next argues that the action should be dismissed either under the doctrine of primary administrative jurisdiction or for failure to comply with the requirement that administrative remedies be exhausted before resort

to judicial remedies. The doctrines are susceptible of confusion. The difference was clarified by Mr. Justice Harlan in United States v. Western Pac. R., 1956, 352 U.S. 59, at pages 63–64, 77 S.Ct. 161, at page 165, 1 L.Ed.2d 126, as follows:

> " 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the * * * competence of an administrative body."

Either principle, however, assumes the existence of a remedy for the wrong charged within the administrative system. Here, after the plaintiffs' informal protest to the Commission was denied, they filed an application for the termination of unlisted trading in their stocks on the New Orleans Stock Exchange, under the portion of Section 12(f) which provides:

> "On the application of the issuer of any security for which unlisted trading privileges on any exchange have been continued or extended pursuant to this subsection, or of any broker or dealer who makes or creates a market for such security, or of any other person having a bona fide interest in the question of termination or suspension of such unlisted trading privileges, or on its own motion, the Commission shall by order terminate, or suspend for a period not exceeding twelve months, such unlisted trading privileges for such security if the Commission finds, after appropriate notice and opportunity for hearing, that by reason of inadequate public distribution of such security in the vicinity of said exchange, or by reason of inadequate public trading activity or of the character of trad-

ing therein on said exchange, such termination or suspension is necessary or appropriate in the public interest or for the protection of investors."

Since all trading on the New Orleans Stock Exchange was to cease imminently at the time of application and has since terminated in fact, it appears that the application is moot. The Commission takes this position in its brief. To require the plaintiffs to press this proceeding before coming into court would be futile. Since no viable proceeding is now pending before the Commission, or has been commenced there, the principle that administrative proceedings should not be interrupted or interfered with until the process has run its course has no application. The case is therefore unlike Securities & Exchange Commission v. Otis & Co., 1949, 338 U.S. 843, 70 S.Ct. 89, 94 L.Ed. 516.

■ Defendant suggests, however, that the plaintiffs have a complete and adequate remedy before the Commission, in that they may file a new application, this one to terminate trading on the defendant Exchange. Under the provisions of Section 12(f), quoted above, such an application is addressed to the discretion of the Commission, and is to be granted only upon the grounds specified by law, that is, that termination is "necessary or appropriate in the public interest or for the protection of investors" by reason of three specified grounds: inadequate public distribution in the vicinity of the exchange, inadequate trading volume, or the character of trading in the security on the exchange. It is not grounds for termination under this Section that unlisted trading, as here asserted, is unlawful and unauthorized.

■ Moreover, it is the gist of the plaintiff's claim that trading in its stocks on the defendant Exchange would disrupt and destroy its established over-the-counter market for the securities. If the stocks must be admitted to trading, so that the statutory standards can be measured against the character of trading on the Exchange, and a decision is then to be made by the Commission, the

plaintiffs will have been subjected to the very trading they seek to avoid, and any relief then granted would be useless. If the injury to be suffered as the cost of pursuing the administrative remedy is irremediable, a court may properly protect the complainant. See Utah Fuel Co. v. National Bituminous Coal Comm., 1939, 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; American Sumatra Tobacco Corp. v. S. E. C., 1937, 68 App.D.C. 77, 93 F.2d 236; Algonquin Gas Transmission Co. v. F. P. C., 1 Cir., 1953, 201 F.2d 334; Isbrandtsen Co. v. United States, 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari denied 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124.

■ A major foundation of the rule requiring a litigant to avail himself of administrative remedies before coming to the courts is the benefit to the court of the advice and judgment of the administrative body concerning matters committed to its charge. To take advantage of this experience and special knowledge, the court should stay its hand until the administrator has spoken. Here, however, the Commission has supplied its opinion, both in its informal decision not to intercede in the transfer of New Orleans trading to the defendant, and in its briefs and participation in the hearings in this court. Moreover, the principal question presented by the plaintiffs' claim is the interpretation of the act of Congress itself, conventionally termed a question of law. This is traditionally the judge's job, and the advice of the administrator does not fill the function of determining, as in other sorts of cases, what degree of regulation is desirable or what the public interest requires. When the question is a matter of law, the court may properly decide. Great Northern Ry. v. Merchants Elevator Co., 1922, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Brotherhood of R. R. Trainmen v. Howard, 1952, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

*The Plaintiffs' Injury*

In support of their request for a preliminary injunction, the plaintiffs offered the testimony of two witnesses on the question of the injury which would be suffered if the defendant were permitted to proceed with trading in Standard's stocks. From this testimony, it appears that most trading in these stocks has been conducted in over-the-counter transactions. A financial expert testified to the reasons why this over-the-counter market would suffer as a result of the proposed exchange trading, impairing the financial position of Standard. Another witness, an experienced over-the-counter dealer, testified that efforts of over-the-counter dealers have produced a substantial widening of Standard holdings, strengthening the market for the securities. He testified in addition that the admission of the securities to trading on the defendant Exchange would lessen the trade in the over-the-counter market, adversely affecting Standard's position.

■ When preliminary relief is in issue, the injury to the party seeking relief that would result from its denial may be counterbalanced by the injury caused by its granting. Here no existing or established trading will be disrupted. Although it is true that the Exchange and its members may be denied prospective fees and commissions, the award of a preliminary injunction would leave them in the status quo, and deprive them only of the returns of trading in a new and additional stock.

■ Upon consideration of the oral testimony, the exhibits introduced, and the undisputed facts established by the affidavits submitted, the court finds that denial of preliminary relief would cause irreparable injury to the plaintiffs and this injury would be substantially greater than any loss which would be suffered by the defendant as a result of the issuance of the injunction.

In compliance with Federal Rule 52(a), this memorandum constitutes the court's findings of fact and conclusions of law.

A preliminary injunction as prayed is issued with this decision. In view of the increased period during which the proposed trading will be suspended, the amount of the security required of the plaintiffs is increased to $5,000.