**AMCHEM PRODUCTS, INC., et al., Plaintiffs,**

v.

**Douglas M. COSTLE, as Administrator of the Environmental Protection Agency, et al., Defendants.**

**No. 76 Civ. 2913.**

United States District Court, S. D. New York.

July 5, 1979.

Sellers, Conner & Cuneo by John D. Conner, Kenneth W. Weinstein, Richard A. Flye and Christian Volz, Washington, D. C. and Arthur, Dry & Kalish by Allan J. Berlowitz, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., S. D. New York by Michael H. Dolinger, Asst. U. S. Atty., New York City, for defendants.

## OPINION

OWEN, District Judge.

Plaintiffs Amchem Products, Inc., et al., are engaged, among other things, in the development and production of pesticide chemicals.

Plaintiffs request a preliminary injunction restraining the Environmental Protection Agency from disclosing research data which was submitted to government agencies in support of various pesticide applications and which plaintiffs consider to be trade secrets. It appears that EPA intends to use these data for the benefit of competitors in the issuance of pesticide registrations. Plaintiffs challenge the federal statute which purports to authorize such disclosure and use, the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq. (hereinafter "FIFRA"), on the ground that it retroactively divests plaintiffs of their property rights, effecting a taking of property without just compensation or due process of law, in violation of the Fifth Amendment to the Constitution.

According to the plaintiffs, a chemical is valuable as a pesticide only to the extent it is both effective against the target organism and safe to non-target organisms, including human beings, and to the environment in general. Consequently, the development process has always been characterized by a substantial investment in scientific research and testing to determine the efficacy, safety and environmental effects of a potential pesticide, resulting in the production of voluminous scientific research data. The government does not dispute this. Plaintiffs contend, therefore, that in a very real sense, these data are their commercial product, and provide the key to the market. Because the development and exclusive possession of these data confer a substantial competitive advantage upon their originator, pesticide manufacturers have always considered significant portions of such data to be trade secrets, and have protected them accordingly. The government in some measure does dispute this.

The proprietary nature of trade secret property, such as research data, has long been recognized by the federal, state, and common law. In the pesticides field, federal agencies have been receiving research data from registrants since 1947 under laws and regulations which provided for confidential treatment of trade secret information, and no federal agency has ever disclosed such data. Plaintiffs invested millions of dollars to produce these research data with the legitimate expectation that they were protected as trade secrets, and that their trade secret status would continue to be respected by the government.

On September 30, 1978 FIFRA was amended to authorize the disclosure of trade secrets for the use and benefit of competing manufacturers in applying for pesticide registrations. No payment is required to the data submitter for use of data submitted prior to January 1, 1970. Payment is required to be made by a competing applicant to an original data submitter for use of trade secrets submitted on or after January 1, 1970, and during a period of 15 years from the date of the registration of the pesticide for which the data was origi-

nally submitted. The terms of payment are to be arbitrated if agreement cannot be reached. As to data submitted after September 30, 1978, it is protected only for a period of ten years from the date of registration of the pesticide concerned and thereafter is without protection.

In response to the passage of the Federal Pesticide Act, plaintiffs have filed a Fourth Amended Complaint, consisting of six counts. Counts I and II challenge the constitutionality of the Federal Pesticide Act of 1978 insofar as it may retroactively divest pesticide research data submitted to EPA and its predecessor agencies between 1947 and September 30, 1978 of their formerly recognized trade secret status, and authorizes EPA to disclose these research data and use them for the economic benefit of plaintiffs' competitors in registering their pesticide chemicals.

The plaintiffs assert that competition in the pesticide industry occurs primarily through research and development. A firm's competitiveness depends principally on its ability to develop new products and to develop new and better uses for existing products. Because of the enormous risk and expense involved in new product development, firms invest substantial portions of their research funds in improvement of existing products.

In order to be competitive, plaintiffs have made conscious corporate decisions to engage in these research and development activities. These efforts, which began as long ago as 1939, have involved the construction and maintenance of sophisticated research laboratories and research farms staffed by highly qualified research scientists, toxicologists, biologists, and organic chemists. Obviously, the research and development process can be lengthy, complex and exceedingly expensive.

The final products of the research and development process are the research and test data which define the properties of the pesticide and establish its safety and efficacy for commercial use. It is the possession of these data alone which enables plaintiffs

to market a pesticide chemical commercially and compete in the industry.

Obviously, therefore, the data generated as a result of plaintiffs research and development activities have immense value in the conduct of plaintiffs' business. Research data not only are essential for pesticide registration, but are also required to meet the standards of states and foreign governments.

The experimental and analytical methodologies devised by plaintiffs during the research and development process for one pesticide chemical are especially valuable in the development of other products. Research data are valuable for developing new non-pesticidal uses for known pesticide chemicals.

Thus, the possibilities for use of pesticide research data to discover new valuable uses for pesticide chemicals are limited only by the skill and imagination of the scientists who review them.

Consequently, plaintiffs assert that pesticide research data are valuable for a wide variety of uses, and anyone possessing these data and the requisite scientific and business skills could use the data for similar purposes. If plaintiffs' competitors were to obtain access to these research data, plaintiffs would lose the substantial competitive advantage earned through research efforts; and their competitors could appropriate the value and use of these data without themselves expending the cost in labor, facilities, money and inventiveness that was required of the plaintiffs.

Because of the extensive effort and expense that go into the development of trade research data, plaintiffs have apparently taken stringent precautions in the past to insure their protection. Further, while obviously the end product is fully and publicly disclosed both as to make-up and efficacy, the agencies that have received plaintiffs' research trade secret data to consider its registration have, the plaintiffs contend, always held the research data in confidence. Indeed, it appears that after the passage of the Freedom of Information Act in 1967, the Food and Drug Administration recon-

firmed that "data in support of petitions relating to pesticide chemicals" were confidential information within the "trade secrets" exemption and could not be disclosed.

Further, the Trade Secrets Act, 18 U.S.C. § 1905 prohibits the unauthorized disclosure of trade secrets by agency officials and makes such disclosure punishable as a crime.

Against this background, the plaintiffs contend that the 1978 amendment to FIFRA is a retroactive taking of their property in violation of the Fifth Amendment and the appropriation of its use to the economic benefit of competing manufacturers.

In response to this, the defendants, and particularly the Administrator of EPA, which is charged with enforcing FIFRA, assert that the 1978 legislation was an authorized and reasonable exercise of Congress' police power authority under the Commerce Clause to protect the public welfare, enhance competition in the pesticide industry, and serve other important interests. Defendants also contend that plaintiffs retain the ability to make reasonably beneficial use of their property.

The government further asserts that disclosure of these data to the public is an appropriate means to lessen the likelihood that commerce in pesticides will cause harm to the public; that there is a general public interest in knowing how the government's decisions about these products are made and in holding the government accountable for the quality of its scientific assessments; that the withholding of research data inhibits the pursuit and advancement of scientific knowledge; that full disclosure plays a vital role in expanding the store of human knowledge and that a preservation of the secrecy of research data places entry barriers against the smaller firms attempting to enter the market, thereby reducing competition in what is already an oligopolistic industry, causing higher prices.

Finally, the government asserts that to the extent there has been a taking of protected property, there exists an adequate legal remedy under the Tucker Act, 28 U.S.C. § 1491.

■ I do not deem it at all clear, given the specific provisions for payment and non-payment provided for in the 1978 FIFRA amendment 7 U.S.C. § 136a(c)(1)(D) that relief under the Tucker Act is the simple answer that the government claims. Not only does FIFRA expressly provide as to certain data there shall be no compensation at all, 7 U.S.C. § 136a(c)(1)(D)(iii), thus raising the question of the withdrawal of Tucker Act jurisdiction, see *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 126, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), but also, and more to the point, plaintiffs here do not seek damages but rather a declaratory judgment of unconstitutionality prior to sustaining potentially uncompensable damages. This they may properly do. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 71 n.15, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978).

■ Next, turning to what is clearer: (1) trade secret research data is treated as property within the intendment of Fifth Amendment protection, *American Sumatra Tobacco Corp. v. SEC*, 68 App.D.C. 77, 93 F.2d 236 (D.C.Cir.1937); *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); and (2) under certain circumstances the appropriation of one person's private property for use by members of the public is a taking. *Loan Association v. Topeka*, 20 Wall 655, 87 U.S. 655, 22 L.Ed. 455 (1874). Surely this is so even where, as here, the taking is not absolute but consists instead of a severe diminution of the value of plaintiff's property.

■ Finally, what is absolutely clear at this point is that under the tests of *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973), in addition to substantial irreparable injury there are obviously serious questions going to the merits to make them a fair ground for litigation with the balance of hardship tipping decidedly toward plaintiffs who are here seeking continuing protection. The government does not dispute that if the injunction is not granted, many millions of dollars of trade research data submitted to the government over the past thirty years will in effect be destroyed in value to the submitters through disclosure to and use by their competitors. Obviously, once disclosed, trade secrets are lost forever.

For the foregoing reasons, the preliminary injunction restraining the Environmental Protection Agency from disclosing trade secret research data and from using this data for the benefit of competitors in the issuance of pesticide registrations is granted pending a trial on the merits herein. In the circumstances of this case I conclude that a bond is not required. The parties are to appear before me on August 14, 1979, at 4:30 P.M. in Courtroom 2804 to fix a date for trial on the merits.

Submit order on notice.